PETER L. CARR, IV (#256104)
PCARR@THEPLCLAWGROUP.COM
NA'SHAUN L. NEAL (#284280)
NNEAL@THEPLCLAWGROUP.COM
PLC LAW GROUP, APC
3756 SANTA ROSALIA DR., SUITE 326
LOS ANGELES, CA 90008
TELEPHONE: (310) 400-5890
FACSIMILE:  (310) 400-5895

ATTORNEYS FOR PLAINTIFF,
**TANIKA TYLER,**
**GUARDIAN AD LITEM FOR D.T., MINOR**

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.T., a minor by and through his, guardian, Tanika Tyler,<br><br>        Plaintiff,<br>   vs.<br><br>San Diego Metropolitan Transit System; City of San Diego, Officer J. Torres; and DOES 1 through 10 inclusive,<br><br>      Defendants. | Case No.:  **'19CV0901 GPC KSC**<br><br>**COMPLAINT**<br>**DEMAND FOR JURY TRIAL** |

### Introduction

1.    This case challenges the abuse of discretion, excessive force and coercive acts that deprived the Plaintiff, D.T., of his federal and state rights. While waiting for a friend outside San Diego High School, D.T. was harassed, brutally arrested, racially mocked, and falsely charged by Defendant San Diego Metropolitan

PLC LAW GROUP, APC

PLC LAW GROUP, APC

Transit System officers, including MTS Officer J. Torres, and officers of the San Diego Police Department. At least two adult officers put so much physical pressure on the compliant minor Plaintiff's throat and back during the interaction that he lost consciousness. During the incident, Defendant Torres also kicked the minor Plaintiff multiple times and applied handcuffs so tightly to him that his skin was cut. Lastly, Defendant Torres called D.T., who is African-American, a "nigger" and falsely accused him of crimes he did not commit. Plaintiff D.T., by and through his Guardian Ad Litem, Tanika Tyler, complains of Defendants San Diego Metropolitan Transit System, City of San Diego, Torres, and Does 1 through 10, inclusive, as follows:

## VENUE AND JURISDICTION

2.    Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331 and 1334, and arises under 42 U.S.C. §§ 1983 and 1988.  State law claims for relief are within this Court's supplemental jurisdiction pursuant to 28 U.S.C. § 1367. Venue is proper in this Court because the unlawful acts and practices alleged herein occurred in the City of San Diego, California, which is within this judicial district pursuant to 28 U.S.C. § 1391.

## PARTIES

3.    At all relevant times herein, guardian ad Litem Tanika Tyler is the biological parent of minor D.T. was and is a resident of the State of California in the County of San Diego.  D.T. is currently 16 years old.

4.    Defendant SAN DIEGO METROPOLITAN TRANSIT SYSTEM (hereinafter referred to as "MTS") is, and at all times in this Complaint was, an incorporated public entity duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendant MTS possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting MTS transit officers, as well as their tactics,

methods, practices, customs and usages.

5.     Defendant MTS OFFICER J. TORRES (hereinafter "TORRES") is, and at all times in this complaint was, an individual employed by MTS and/or its subsidiaries as a transit officer, acting with the course and scope of his employment and also within his actual and apparent authority as an officer of a public entity, MTS.

6.     Defendant CITY OF SAN DIEGO (hereinafter referred to as "COSD") is, and at all times in this complaint was, an incorporated public entity duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendant COSD possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the SAN DIEGO POLICE DEPARTMENT (hereinafter referred to as "SDPD") and its tactics, methods, practices, customs and usages.

7.     At all relevant times mentioned herein and material hereto, the Defendant DOE Officers described below engaged in law enforcement as police officers, sergeants, captains, lieutenants, and/or civilian employees, agents and representatives of either Defendant COSD, duly employed as police officers by the SDPD, or Defendant MTS, duly employed as police officers by MTS, who acted in the course and scope of their employment at all times relevant to the acts and omissions herein alleged.

8.     PLAINTIFF is informed and believes and thereon alleges that each of the Defendants designated as a DOE are intentionally and negligently responsible in some manner for the events and happenings herein referred to, and thereby proximately caused injuries and damages as herein alleged.  The true names and capacities of DOES 1 through 10, inclusive, and each of them, are not now known to PLAINTIFF who, therefore, sues said Defendants by such fictitious names. PLAINTIFF will seek leave to amend this Complaint to show their true

names and capacities when same have been ascertained.

9.    Defendants, and each of them, acted under color of law and did the acts and omissions hereinafter alleged in bad faith and with knowledge that their conduct violated established and commonly understood substantive and procedural law.

## FACTS COMMON TO ALL COUNTS

10.  D.T. is an African-American 16-year-old.

11.  Upon information and belief, on or about October 11, 2018 at approximately 2:00 p.m., D.T. was waiting near the City College Trolley Station for a friend.

12.  Roughly an hour later, on or about 3:10 p.m., D.T. saw his friend as well as several MTS officers who were requesting that the group of San Diego High School students in the area move "down the hill."

13.  D.T. complied, taking his skateboard and moving locations.

14.  TORRES then grabbed D.T. from behind.

15.   TORRES stated, "You have to leave," and D.T. responded, "That's fine. I will leave, please do not touch me."

16.  In response, TORRES screamed "You must leave!"

17.  As D.T. complied with TORRES' command to leave, D.T. took his skateboard from the wall.

18.  TORRES then grabbed D.T. and stated "You are detained, do not resist or I will taze you."

19.  In response, D.T. informed TORRES that he was a minor.

20.  At no time prior to, during or after the encounter did D.T. resist TORRES.

21.  TORRES then requested another security guard to assist him and the two adult men slammed D.T. to the ground.

22.  Despite D.T.'s total compliance with TORRES' commands, TORRES repeatedly yelled, "Stop resisting!"

23.  TORRES then began choking D.T. by pressing the minor against the transit

PLC LAW GROUP, APC

railing while an unidentified security guard pressed his knee into D.T.'s rib.

24.  D.T. lost consciousness.

25.  When D.T. regained consciousness, he was in pain and noticed that he had been handcuffed so tightly that his skin was cut around the wrist.

26.  While on the ground, D.T. heard an unidentified female student say words to the effect of "Why are you treating him like this? Is it because he's black? Because I didn't see you treat the other Mexican kid like that."

27.  TORRES then demanded D.T. to get up as he yanked the minor up from the ground and painfully bent his arm.

28.  D.T. repeatedly requested a supervisor or police officer as TORRES pulled D.T. over to a nearby bench.

29.  TORRES told D.T. to sit down on the bench and as D.T. was attempting to comply, TORRES kicked D.T. four to five times.

30.  Once D.T. was sitting, TORRES requested to search D.T.

31.  D.T. stated that he did not consent to the request.

32.  TORRES stopped momentarily, then placed D.T. on the ground behind the bench.

33.  An unknown number of other MTS officers and security guards began to form a human barricade around D.T. and TORRES, which prevented the public from witnessing TORRES' conduct.

34.  At this point, an unidentified man yelled, "He's a kid."

35.  TORRES then began to kick D.T. who was sitting on the ground.

36.  At this point, San Diego Police Department Officer # Doe 1 ("SDPD Officer #1) arrived.

37.  D.T. told SDPD Officer #1 that TORRES had violated his rights and was acting unlawfully.

38.  SDPD Officer #1 responded, "I do not care what you learned in high school."

PLC LAW GROUP, APC

39. TORRES then began filling out a ticket to give to D.T.

40. While TORRES was writing the ticket, D.T. asked why he was being arrested.

41. TORRES ignored D.T.'s question and other MTS officers and SDPD officers who heard D.T.'s question said they did not know or did not reply.

42. TORRES then requested D.T.'s first name, which D.T. spelled out loud for TORRES.

43. TORRES then asked for D.T.'s middle name, and D.T. responded, "I do not have a middle name."

44. TORRES replied, "What's your middle initial, nigger?"

45. D.T. responded, "What did you say?"

46. TORRES smirked and proceeded to ask D.T. for his last name.

47. At this point, one security officer noticed the extremely tight handcuffs on D.T.'s wrists and loosened them.

48. D.T. was later placed in the back of a patrol car for over 30 minutes with a Latino student who he did not know.

49. The Latino student was not mistreated by any MTS officer, despite carrying a knife on his person and being caught smoking marijuana.

50. The unidentified Latino student was later released.

51. Later, TORRES alleged that he was writing D.T. a ticket because D.T. had ridden a bike or scooter through the station.

52. D.T. replied that he did not have a bike or scooter.

53. TORRES responded by then falsely accusing D.T. of disobeying lawful orders.

54. Prior to releasing D.T., TORRES told D.T. to spread his legs, without any legal justification.

55. As a result of the excessive force TORRES applied against D.T., D.T. suffered multiple contusions, severe neck strain, and back pain.

56.   In addition to the physical injuries D.T. suffered at the hands of TORRES and DOE Officers, D.T. also suffered a loss of liberty and emotional trauma.

57.   Defendants TORRES, COSD and DOE OFFICERS owed to PLAINTIFF non-consensual duties set forth in California Penal Code Sections 118.1 (false police report): 148.5 (false report of a crime); 134 (preparing false evidence); 132 (offering false evidence); 127 (subordination of perjury); 137 (induce false testimony); 182(1) (conspiracy to commit crime); 182(2) (conspiracy to obstruct justice); 832.5 (personnel complaint investigations required); and Gov. Code § 1031 (duty to investigate hires).

## FIRST CAUSE OF ACTION

### VIOLATION OF CIVIL RIGHTS- EXCESSIVE FORCE 42 U.S.C. § 1983
### (Against TORRES and DOE Officers)

58.   Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

59.   This cause of action arises under Title 42 United States Code § 1983, wherein Plaintiff seeks to redress deprivation under color of law a privilege or immunity secured under the Fourth Amendment.

60.   As a result of the above described intentional acts and omissions of the defendants, collectively and individually, Plaintiff's Fourth Amendment constitutional right to be free from unreasonable searches and seizures, as applied to state actors by the Fourteenth Amendment, was violated when:

a. TORRES threatened D.T. with a taser, despite D.T.'s compliance.

b. TORRES and DOES slammed D.T. to the ground, despite D.T.'s compliance.

c. TORRES and DOES exerted so much pressure on D.T.'s body, that he lost consciousness.

PLC LAW GROUP, APC

PLC LAW GROUP, APC

d. TORRES applied handcuffs to D.T.'s wrists so tightly that he cut D.T.'s skin.

e. TORRES yanked D.T. up from the ground and painfully bent his arm.

f. TORRES kicked D.T. four to five times while D.T. was attempting to comply with TORRES' order to sit on the bench.

g. TORRES kicked D.T. several times while covered from public sight by the human barricade of officers.

61.  The conduct of the Defendant Officers was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages as to Defendant Officers.

62.  As a result of the conduct of Defendants, they are liable for Plaintiff's injuries, either because they were integral participants in the unlawful detention and arrest, or because they failed to intervene to prevent these violations.

63.  At no point did D.T., an unarmed minor, pose a reasonable threat of violence or danger to the Defendant Officers or to any other individual. D.T. made no aggressive movements, furtive actions, or physical movements that would have suggested to any reasonable officer that D.T. had the will or ability to inflict substantial bodily harm against any individual.

64.  Additionally, TORRES and the DOE Officers acted entirely without probable cause or reasonable suspicion that D.T. had committed, was committing, or would commit any crime.

65.  Lastly, at no point during the incident did D.T. show any sign of resisting the Defendant Officers.

66.  Accordingly, Defendants are each liable to Plaintiff for compensatory and punitive damages, under 42 U.S.C. § 1983. Plaintiff also seeks litigation costs under this claim.

PLC LAW GROUP, APC

## SECOND CAUSE OF ACTION
## VIOLATION OF CIVIL RIGHTS- UNLAWFUL DETENTION
## 42 U.S.C. § 1983
## (Against TORRES and DOE Officers)

67. Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

68. This cause of action arises under Title 42 United States Code § 1983, wherein Plaintiff seeks to redress deprivation under color of law a privilege or immunity secured under the Fourth Amendment.

69. As a result of the above described intentional acts and omissions of the defendants, collectively and individually, Plaintiff's Fourth Amendment constitutional right to be free from unreasonable searches and seizures, as applied to state actors by the Fourteenth Amendment, was violated when:

a. TORRES forcefully grabbed D.T. from behind while D.T. was complying with the TORRES' order to leave the area.

b. TORRES and DOES handcuffed and detained D.T. for questioning without a warrant, reasonable suspicion, or probable cause that D.T. had committed or was committing a crime.

c. TORRES and DOES placed D.T. into the back of a patrol car for approximately 30 minutes, without a warrant, reasonable suspicion, or probable cause that D.T. had committed or was committing any crime.

d. TORRES ordered D.T. to spread his legs, without a warrant, reasonable suspicion, or probable cause that D.T. had committed or was committing any crime.

70. The conduct of the Defendant Officers was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff, and therefore

warrants the imposition of exemplary and punitive damages as to Defendant Officers.

71.   As a result of the conduct of Defendants, they are liable for Plaintiff's injuries, either because they were integral participants in the unlawful detention and arrest, or because they failed to intervene to prevent these violations.

72.   Plaintiff was detained without a warrant, reasonable suspicion or probable cause. At the time of the initial detention, D.T. was fully complying with TORRES' order to move from the immediate area.

73.   Later, when D.T. asked TORRES and other nearby officers why he was being detained and what crime he was suspected of having committed, no one was able to provide an answer, which suggests there was no articulable reason for his detention.

74.   TORRES later told D.T. that he was receiving a ticket for riding a bike or scooter through the station, even though D.T. had neither a bike nor scooter in his possession. Furthermore, even if D.T. did have a bike or scooter in his possession, it is not clear that TORRES saw D.T. move through the station roughly an hour before their first interaction. Given both of these facts, a reasonable officer could not have had probable cause that D.T. had committed the alleged infraction.

75.   TORRES subsequently told D.T. that he was receiving a ticket for disobeying police orders.  However at no point during the entire incident did D.T. ever resist or disobey any police order. Given this fact, no reasonable officer could show that probable cause existed to detain D.T. on the allegation.

76.   Accordingly, Defendants are each liable to Plaintiff for compensatory and punitive damages, under 42 U.S.C. § 1983. Plaintiff also seeks litigation costs under this claim.

## THIRD CAUSE OF ACTION
## VIOLATION OF CIVIL RIGHTS- EQUAL PROTECTION VIOLATION

PLC LAW GROUP, APC

## 42 U.S.C. § 1983

### (Against TORRES and DOE Officers)

77.  Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

78.  This cause of action arises under the Equal Protection Clause of the 14th Amendment, wherein Plaintiff seeks to redress deprivation under color of law a privilege or immunity secured under the U.S. Constitution.

79.  As a result of the above described intentional acts and omissions of the defendants, collectively and individually, Plaintiff's Fourteenth Amendment constitutional right to be free from racial discrimination, was violated when:

> a. TORRES and DOES repeatedly struck and harassed D.T. on account of his race, while no law enforcement agent attacked or harassed the Latino suspect who was carrying a knife and had smoked marijuana.

> b. TORRES and DOES continued to abuse D.T. despite an onlooker noting that they were treating D.T. significantly worse than the Latino suspect on account of D.T.'s race.

80.  The conduct of the Defendant Officers was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages as to Defendant Officers.

81.  As a result of the conduct of Defendants, they are liable for Plaintiff's injuries, either because they were integral participants in the violation of D.T.'s Equal Protection rights, or because they failed to intervene to prevent these violations.

82.  Accordingly, Defendants are each liable to Plaintiff for compensatory and punitive damages, under 42 U.S.C. § 1983. Plaintiff also seeks litigation costs under this claim.

# FOURTH CAUSE OF ACTION
## VIOLATION OF CIVIL RIGHTS-42 U.S.C. SECTION 2000(d)
### (Against TORRES and DOES)

83.  Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

84.  This cause of action arises under Title VI of the Civil Rights Act of 1964, wherein Plaintiff seeks to redress deprivation under color of law a privilege or immunity secured under 42 U.S.C. § 2000(d).

85.  The law enforcement activities described in this complaint have been funded, in part, with federal funds.

86.  As a result of the above described intentional acts and omissions of the defendants, collectively and individually, Plaintiff's right to be free from racial discrimination under federally assisted programs, was violated when:

  a. TORRES and DOES repeatedly struck and harassed D.T. on account of his race, while no law enforcement agent attacked or harassed the Latino student who was carrying a knife and had smoked marijuana

  b. TORRES called D.T. a "nigger."

87.  The conduct of the Defendant Officers was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiff, and therefore warrants the imposition of exemplary and punitive damages as to Defendant Officers.

88.  As a result of the conduct of Defendants, they are liable for Plaintiff's injuries, either because they were integral participants in the violation of D.T.'s right to be free from racial discrimination under federally assisted programs, or because they failed to intervene to prevent these violations.

89.  Accordingly, Defendants are each liable to Plaintiff for compensatory and

PLC LAW GROUP, APC

punitive damages, under 42 U.S.C. § 2000(d). Plaintiff also seeks litigation costs under this claim.

## FIFTH CAUSE OF ACTION

## VIOLATION OF CIVIL RIGHTS- FIRST AMENDEDMENT  42 U.S.C. § 1983

### (Against TORRES and DOES)

90.  Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

91.  This cause of action arises under Title 42 United States Code § 1983, wherein Plaintiff seeks to redress deprivation under color of law a privilege or immunity secured under the First Amendment.

92.  As a result of the above described intentional acts and omissions of the defendants, collectively and individually, Plaintiff's First Amendment constitutional right to be petition his government, as applied to state actors by the Fourteenth Amendment, was violated when:

> a.  TORRES forcefully grabbed D.T. from behind while D.T. was complying with the TORRES' order to leave the area and request TORRES to stop touching him.

93.  As a consequence of Defendants' actions, Plaintiff has suffered violations of his First and Fourteenth Amendment rights to free speech, assembly, and association, including the grievance, as a form of political speech.

94.  Plaintiff fears that he will be subject to similar unlawful acts by Defendants in the future because he is a frequent user of mass transits in the San Diego area, and remains frightened to exercise his protected speech rights in the presence of police officers.

95.  As a proximate results of Defendants' unlawful actions, Plaintiff has suffered

PLC LAW GROUP, APC

damages, including physical, mental, and emotional injury and pain, mental anguish, suffering, humiliation, and embarrassment.

## SIXTH CAUSE OF ACTION

## MUNCIPAL LIABILITY FOR UNLAWFUL CUSTOM AND PRACTICE UNDER SECTION 1983

### (Against Defendants COSD and MTS)

96.  Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

97.  Defendants COSD and MTS, are and at all times herein mentioned, have been public entities duly authorized and existing as such in and under the laws of the State of California. At all times herein mentioned, Defendants COSD and MTS possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the SDPD and MTS transit officers respectively, and their tactics, methods, practices, customs and usages.

98.  At all times herein mentioned, Defendants and each of them, were employees acting under the direction and control of either MTS or COSD and SDPD, who knowingly and intentionally promulgated, maintained, applied, enforced and suffered the continuation of policies, customs, practices and usages in violation of the Fourth and Fourteenth Amendments respectively to the United States Constitution, which customs, policies, practices and usages at all times herein mentioned, required and encouraged the employment, deployment and retention of persons as peace officers who have demonstrated their brutality, dishonesty, and numerous other serious abuses of their powers as peace deputies in the employment of the COSD or MTS.

99.  The unconstitutional policies, practices or customs promulgated, sanctioned or tolerated by Defendants COSD and MTS include, but are not limited to:

a.    Defendants COSD and MTS had knowledge, prior to and since this incident, of similar allegations of wrongful and unlawful battery, dishonesty and improper tactics, and corruption by SDPD and MTS employees, including the individual Defendants herein, and refused, with deliberate indifference, to enforce established administrative procedures to insure public safety, protection of citizens' rights and the PLAINTIFF's liberty interests;

b.    Defendants COSD and MTS refused to adequately discipline individual employees found to have committed similar acts of dishonesty and misconduct;

c.    Defendants COSD and MTS refused to competently and impartially investigate allegations of abuse and misconduct alleged to have been committed by SDPD and MTS employees;

d.    Defendants COSD and MTS failed to adequately supervise the actions of employees under its control;

e.    Defendants COSD and MTS failed to adequately train its officers so as to avoid constitutional violations;

f.    Defendants COSD and MTS condoned and participated in the practice of prosecuting groundless criminal charges for the purpose of insulating the COSD and MTS employees from civil liability and reducing or dismissing criminal charges against individuals in return for releasing them from civil liability;

g.    Defendant COSD and MTS tacitly condones and encourages a conspiracy of silence among its employees for the purpose of concealing and furthering wrongful and illegal conduct;

h.    Defendant COSD and MTS tacitly condones and encourages use of excess force on citizens;

i.    Defendant COSD and MTS fostered and encouraged an atmosphere of lawlessness, abuse and misconduct, which by October 11, 2018, and thereafter, represented the unconstitutional policies, practices and customs of the COSD and

PLC LAW GROUP, APC

PLC LAW GROUP, APC

MTS.

j.   Defendant COSD and MTS's arrest and unlawful use of force against D.T. is a part of a practice and pattern COSD and MTS's unlawful mistreatment and criminalization of African-American and other non-white persons.

100. The following are a list of incidents exemplifying the aforementioned policies, customs, practices and usages of Defendants COSD and MTS:

a.  In November 2015, Mr. Allen Koka, an Iraqi man, filed a lawsuit against MTS and its officers alleging excessive force, false arrest, unlawful custom and practice, assault, battery, and negligence among other claims, according to media reports. The case settled in December 2016.

b.  In November 2012, Mr. Arturo Fernando Alcocer Romo and Ms. Maria Angel Fregoso Lamadrid, a married Mexican couple living in San Diego, filed a lawsuit against MTS and its officers, alleging excessive force, false arrest, and failure to train and supervise. The case settled for $25,000, according to media reports.

c. According to media reports, in June 2015, Mr. Devin Whitaker, a young African-American man with dreadlocks filed a lawsuit against MTS, its officers, and other area law enforcement agencies and personnel, alleging excessive force, false arrest, and unconstitutional customs, policies or practices among other claims. The case settled in December 2015.

101. The decision of TORRES to assault, detain and berate D.T. for no conceivably valid reason represents a larger systemic issue of predatory policing and a culture among police departments that encourages visiting violence on marginalized groups.

102. The violent arrest of D.T. stemmed from at best minor infraction. The fact that TORRES used enough force to render the minor unconscious over such a petty offense illustrates a broader pattern of mass criminalization, whereby African-

American men and boys are disproportionately subjected to encounters with police for non-serious behaviors and activities.

103. Specifically, in San Diego, data from the San Diego Police Department shows evidence of discrimination against African-American and other non-white persons.

104. A study published in 2014 by the ACLU of San Diego and Imperial Counties found that black drivers are stopped at a rate 2 times larger than their relative share of the driving population. Once stopped, black people are searched at three times the rate of white drivers while Hispanic drivers are searched at twice the rate of white drivers. Yet, African-American and Hispanic drivers were less likely than white drivers to be arrested after being searched by the police.

105. D.T., as well as an onlooker to TORRES' behavior, noted the racially disparate pattern of force applied during the incident. D.T. experienced fear for his life during the encounter because of his knowledge of the particular vulnerabilities that African-American men and boys have systematically experienced at the hands of police across the country.

106. TORRES escalated his use of force in part because D.T. asked to not be touched, stated that his rights were violated, and asked for information surrounding the detention.

107. By reason of the aforesaid policies, customs, practices and usages, PLAINTIFF's First, Fourth, and Fourteenth Amendments to the United States Constitution were violated.

108. On information and belief, not one of the Defendant Officers involved in the aforementioned incident has been reprimanded or sanctioned by Defendant MTS or SDPD for their actions against D.T.

109. On information and belief, the extreme escalation of a verbal command into a violent arrest was ratified by Defendant MTS and SDPD by failing to discipline any officer involved, or modify training to address this type of situation in the

future.

## SEVENTH CAUSE OF ACTION
## NEGLIGENCE –Cal. Govt. Code §§ 815.2(a), 820(a)
## (Against TORRES and DOE Officers)

110. Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein

111. Plaintiff is informed and believes and there upon alleges that Defendants, and each of them, failed to exercise reasonable and ordinary care in committing the acts alleged herein, by actions and inactions which include, but are not limited to, negligently stopping and detaining Plaintiff without probable cause or reasonable suspicion to believe that Plaintiff had or was committing a crime, negligently using excessive and unreasonable physical force upon the person of Plaintiff, when the same was unnecessary and unjustified, negligently failing to determine that Plaintiff posed no threat of physical harm to any person when they were assaulted and battered, negligently attacking Plaintiff as described, negligently failing to render timely medical aid to Plaintiff after he was injured by the individual defendants. All of these negligent acts proximately caused severe injuries to Plaintiff, as described herein.

112.   As a result of these acts, PLAINTIFFS were placed in great fear of his life and physical well being. Moreover, due to the negligent acts of each of these Defendants, Plaintiff has suffered and will continue to suffer serious pain and severe mental anguish.

113.   As a proximate result of the above mentioned conduct of Defendants, and each of them, Plaintiff has been required to employ and did employ physicians and surgeons to examine, treat, and care for him, and incurred other incidental medical expenses in an amount according to proof at trial.

PLC LAW GROUP, APC

# EIGHTH CAUSE OF ACTION

## BATTERY

### (Against TORRES and DOE Officers)

114. Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

115. On October 11, 2018 Defendants TORRES and DOES, acting individually and in concert with other law enforcement agents, assaulted and battered Plaintiff by acts which included, but were not limited to: slamming D.T. to the ground; pressing on D.T.'s back and body with so much force as to make D.T. lose consciousness; applied handcuffs so tight around D.T.'s wrist that his skin was cut; yanked D.T. up from the ground and painfully bent his arm; kicked D.T. four to five times while D.T. was attempting to comply with TORRES' orders; kicked D.T. several times while covered from public sight by the human barricade of officers, all without his consent. In assaulting and battering Plaintiff as described herein, Defendants TORRES and DOES proximately caused severe and potentially permanent injuries to Plaintiff.

116. Both prior to and during the time in which he was assaulted and battered, Plaintiff was not armed with any kind of weapon and posed no reasonable threat of violence to the Defendant Officers, nor to any other individual. When he was attacked, as described herein, Plaintiff made no aggressive movements, no furtive gestures, and no physical movements which would suggest to a reasonable officer that he had the will or ability to inflict substantial bodily harm against any individual. Additionally, plaintiff was a minor and was in the presence of several adult officers during the incident.

117. As a result of the above alleged conduct, Plaintiff suffered serious bodily harm including, but not limited to serious back pain as well as sprain or strain to the

PLC LAW GROUP, APC

lumbar spine and right shoulder.

118. As a result of these acts, Plaintiff was placed in great fear of his life and physical well-being. Moreover, due to the wrongful, intentional, and malicious of the Defendant Officers, Plaintiff has suffered and will continue to suffer extreme pain and severe mental anguish.

119. As a proximate result of the aforementioned conduct of Defendants, and each of them, Plaintiff has been required to employ and did employ physicians to examine, treat and care for him, and incurred other incidental medical expenses in an amount according to proof at trial.

120. The aforementioned acts and omissions alleged herein were intended by each Defendant to cause injury to Plaintiff, and were done with a conscious disregard for the rights and safety of Plaintiff as the acts and omissions were willful, wanton, malicious and oppressive, thereby justifying the awarding of compensatory and punitive damages against each of the individual defendants in an amount to be determined according to proof at trial.

## NINTH CAUSE OF ACTION
## VIOLATION OF THE UNRUH ACT-Cal. Civil Code § 51)
## (Against TORRES and DOE Officers)

121. Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

122. The Unruh Act provides that "[a]ll persons within the jurisdiction of California are free and equal, and no matter what their disability, are entitled to full and equal accommodations, advantages, facilities, privileges or services in all businesses."

123. D.T. has an inalienable right to participate fully in the educational process free from discrimination, abuse and harm.

PLC LAW GROUP, APC

124. Plaintiff further alleges that the Defendants have an affirmative obligation to provide policing free from any form of discrimination.

125. In doing the acts as alleged throughout this complaint, Defendants acted intentionally and with a conscious and flagrant disregard of D.T.'s rights to be in an environment free from discrimination.

126. As a direct and proximate result of the acts and omissions of Defendants and each of them, D.T. has suffered severe and permanent physical and emotional injury, including, but not limited to, serious back pain, strains or sprains to his lumbar spine and shoulder, extreme anxiety, humiliation, embarrassment, ridicule and attorney's fees. The full extent of D.T.'s injuries and damages are not known at this time. Plaintiff will articulate their extent once ascertained with particularity.

## TENTH CAUSE OF ACTION
## VIOLATION OF THE BANE ACT
### (Cal. Civil Code §§ 52 and 52.1)

127. As alleged herein, Defendants TORRES and DOES interfered by intimidation, or coercion with Plaintiff's rights under state and federal laws and under the state and federal constitution including, without limitation, the right to education free from discrimination, including, and his rights under the Fourth and Fourteenth Amendments to the United States Constitution, and his rights under Article 1, Sections 1, 7 and/or 13 of the California Constitution.

128. Defendants TORRES and DOES, by engaging in deliberate indifference to Plaintiff's education needs, interfered with Plaintiff's enjoyment of his rights under federal and California law, thus giving rise to claims for damages pursuant to California Civil Code § 52.1.

129. Defendants TORRES and DOES' conduct caused Plaintiff extreme pain and suffering.

130.   As a result of their conduct, Defendants are liable for Plaintiff's injuries, either because they were integral participants in the misconduct, or because they failed to intervene to prevent these violations.

## PRAYER

WHEREFORE, PLAINTIFF requests entry of judgment in his favor and against Defendants as follows:

1.   For compensatory (or general) damages, including pain and suffering, in an amount exceeding the minimum jurisdictional requirement of this Court according to proof;

2.   For special damages according to proof;

3.   For punitive damages as provided by federal and state law, in an amount to be proved against each individual Defendant;

4.   For prejudgment interest;

5.   For attorney's fees pursuant to 42 U.S.C. § 1983 & California Civil Code § 52.1 (h);

6.   For reasonable costs of this suit incurred herein;

7.   For such other and further relief as the Court may deem just, proper and appropriate.

Dated: May 6, 2019                    **PLC LAW GROUP, APC**

*/s/Peter L. Carr, IV*
_____
Peter L. Carr, IV
Na'Shaun L. Neal
Attorneys for Plaintiff D.T. a minor
by and through his guardian ad litem,
Tanika Tyler

PLC LAW GROUP, APC

## **DEMAND FOR JURY TRIAL**

PLAINTIFF hereby respectfully demands a trial by jury on all issues and claims.

Dated: May 6, 2019                                   **PLC LAW GROUP, APC**

*/s/Peter L. Carr, IV*
_____
Peter L. Carr, IV
Na'Shaun L. Neal
Attorneys for Plaintiff D.T. a minor
by and through his guardian ad litem,
Tanika Tyler

JS 44 (Rev. 06/17)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

**I. (a) PLAINTIFFS**

D.T, a minor by and through his guardian ad litem, Tanika Tyler

**DEFENDANTS**

San Diego Metropolitan Transit System; City of San Diego, Officer J. Torres; and DOES 1 through 10 inclusive

**(b)** County of Residence of First Listed Plaintiff    San Diego
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    San Diego
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Peter L. Carr, IV/ Na'Shaun L. Neal
PLC Law Group, APC 3756 Santa Rosalia Dr. Suite 326 Los Angeles, CA 90008; 310-400-5890

Attorneys *(If Known)*

'19CV0901 GPC KSC

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1   U.S. Government   Plaintiff
- ☒ 3   Federal Question    *(U.S. Government Not a Party)*
- ☐ 2   U.S. Government   Defendant
- ☐ 4   Diversity    *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)*      Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | | ☐ 370 Other Fraud | | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Management Relations | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 362 Personal Injury - Medical Malpractice | | ☐ 740 Railway Labor Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 751 Family and Medical Leave Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☒ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

**V. ORIGIN** *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. 1983

Brief description of cause:
Police Misconduct /Excessive Force Against a Minor near a public transit

**VII. REQUESTED IN COMPLAINT:**

☐ CHECK IF THIS IS A **CLASS ACTION** UNDER RULE 23, F.R.Cv.P.

DEMAND $
More than $25,0000

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes   ☐ No

**VIII. RELATED CASE(S) IF ANY**

*(See instructions):*    JUDGE _____    DOCKET NUMBER _____

DATE
5/7/2019

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

Print      Save As...      Reset

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court.  This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed.  The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.**  Enter names (last, first, middle initial) of plaintiff and defendant.  If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations.  If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

  **(b)**   **County of Residence.**  For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing.  In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing.  (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

  **(c)**   **Attorneys.**  Enter the firm name, address, telephone number, and attorney of record.  If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.**  The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings.  Place an "X" in one of the boxes.  If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff.  (1) Jurisdiction based on 28 U.S.C. 1345 and 1348.  Suits by agencies and officers of the United States are included here.
United States defendant.  (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question.  (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States.  In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship.  (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states.  When Box 4 is checked, the citizenship of the different parties must be checked.  (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.**  This section of the JS 44 is to be completed if diversity of citizenship was indicated above.  Mark this section for each principal party.

**IV.**   **Nature of Suit.**  Place an "X" in the appropriate box.  If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable.  Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.**  Place an "X" in one of the seven boxes.
Original Proceedings.  (1) Cases which originate in the United States district courts.
Removed from State Court.  (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441.  When the petition for removal is granted, check this box.
Remanded from Appellate Court.  (3) Check this box for cases remanded to the district court for further action.  Use the date of remand as the filing date.
Reinstated or Reopened.  (4) Check this box for cases reinstated or reopened in the district court.  Use the reopening date as the filing date.
Transferred from Another District.  (5) For cases transferred under Title 28 U.S.C. Section 1404(a).  Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer.  (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File.  (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.**  Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.**  Report the civil statute directly related to the cause of action and give a brief description of the cause.  **Do not cite jurisdictional statutes unless diversity.**  Example: U.S. Civil Statute: 47 USC 553  Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.**  Class Action.  Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand.  In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand.  Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.**  This section of the JS 44 is used to reference related pending cases, if any.  If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.**  Date and sign the civil cover sheet.