1
2
3
4
5
6
7
8                  UNITED STATES DISTRICT COURT
9                 SOUTHERN DISTRICT OF CALIFORNIA
10

11  D.T. a minor, by and through his guardian        Case No.: 3:19-cv-0901-GPC-KSC
    Tanika Tyler,
12                                                   **ORDER GRANTING DEFENDANT'S**
                                      Plaintiff,     **MOTION TO DISMISS**
13                                                   **PLAINTIFF'S SIXTH (6) AND**
    v.                                               **TENTH (10) CLAIMS WITHOUT**
14                                                   **PREJUDICE**
    SAN DIEGO METROPOLITAN
15  TRANSIT SYSTEM; CITY OF SAN
    DIEGO; OFFICER J. TORRES; and                    **[ECF No. 3]**
16  DOES 1 through 10, inclusive,
17                                   Defendants.
18

19          Plaintiff, D.T. has filed suit, by and through his guardian, alleging claims of
20  excessive force, unlawful detention, equal protection violations, civil rights violations,
21  negligent conduct, battery, and a violation of the Unruh Act, Cal. Civil Code § 51,
22  against Metropolitan Transit System ("MTS") Officer J. Torres and multiple, unidentified
23  Doe Officers employed by MTS and the San Diego Police Department ("SDPD"). ECF
24  No. 1 at ¶¶ 58–95, 110–24. Plaintiff D.T. also alleges claims against the City of San
25  Diego ("Defendant" or "City") and MTS arising under the Bane Act, Cal Civil Code §§
26  52, 52.1, and *Monell v. Dep't of Social Services City of New York*, 436 U.S. 658, 691
27  (1978). *Id.* at ¶¶ 96–109, 127–30.
28

                                               1

The Defendant City has filed a motion to dismiss alleging that D.T. has not adequately pled *Monell* and Bane Act claims. ECF No. 3. The motion has been fully briefed and, for the reasons stated hereinbelow, the Court **GRANTS** the City's motion with leave to amend.

## I.    Background

### a.  Factual Background

Plaintiff D.T. is a 16-year-old juvenile of African American descent. ECF No. 1 at ¶ 10. At approximately 2:00 p.m. on October 11, 2018, D.T. was waiting near the City College Trolley Station for a friend. *Id.* at ¶ 11. At about 3:10 p.m., various officers told D.T. and other students in the area to move "down the hill." *Id.* at ¶ 12. D.T. grabbed his skateboard and obeyed that order. *Id.* at ¶ 13.

As D.T. walked away, Officer J. Torres approached him, grabbed him from behind, and informed him that he "had to leave." *Id.* at ¶¶ 4–5, 14–15. After D.T. responded "That's fine. I will leave, please do not touch me," Torres screamed "You must leave!". *Id.* at ¶¶ 15–16. Torres then grabbed D.T. and detained him, threatening to "taze" him if he disobeyed. *Id.* at ¶ 17. With the aid of "another security guard," Torres "slammed" D.T. on the ground and began choking D.T. by pressing him against the transit rail. *Id.* at ¶¶ 21, 23. The "unidentified security guard" pressed his knee into D.T.'s ribs and D.T. lost consciousness. *Id.* at ¶¶ 23, 24. Torres yelled at D.T. to stop resisting, though D.T. did not resist. *Id.* at ¶¶ 13, 17, 20, 22.

Once D.T. regained consciousness, he found himself tightly handcuffed and in pain. *Id.* at ¶ 25. D.T. overheard a female student yell at the officers, "Why are you treating him like this? Is it because he's black? Because I didn't see you treat the other Mexican kid like that." *Id.* at ¶ 26. Torres then "yanked" D.T. to his feet and pulled him over to a nearby bench. *Id.* at ¶¶ 27, 28. As D.T. tried to comply, Torres kicked him four to five times. *Id.* at ¶ 29. D.T. requested to speak to a supervisor or police officer, but none came. *Id.* at ¶ 28. Torres then asked to search D.T., who refused. *Id.* at ¶¶ 30, 31.

Officer Torres pulled D.T. to the ground behind the bench and began to kick him

again. *Id.* at ¶¶ 32, 35. "An unknown number of other MTS officers and security guards" in the area formed a "human barricade" to prevent[] the public from witnessing" Torres kicking D.T. *Id.* at ¶ 33. Another bystander yelled, "He's a kid." *Id.* at ¶ 34.

At that point SDPD Officer Doe #1 arrived ("SPDP Officer 1"). *Id.* at ¶ 36. Plaintiff told the SDPD Officer that Officer Torres had violated his rights and was acting unlawfully. *Id.* at ¶ 37. The SDPD officer said, "I do not care what you learned in high school." *Id.* at ¶ 38. Torres then began writing D.T. a ticket. *Id.* at ¶ 39. D.T. asked why he was being arrested and the officers either ignored D.T. or said they did not know. *Id.* at ¶¶ 40, 41. Torres then asked for D.T.'s first name, which D.T. provided. *Id.* at ¶ 42. When D.T. told Torres that he did not have a middle name, Torres replied, "What's your middle name, nigger?". *Id.* at ¶¶ 43, 44. D.T. asked Torres "what did you say?", and Torres smirked in response. *Id.* at ¶ 44-46. At some point after D.T.'s arrest, a security officer loosened D.T.'s "extremely tight handcuffs." *Id.* at ¶ 47.

Next, D.T. was placed in a police car. *Id.* at ¶ 48. Another Latino student, who was not "mistreated" by any MTS officer, was also in the car. *Id.* at ¶ 49. That student was later released. *Id.* at ¶ 50. Torres then informed D.T. that he was writing him a ticket "because D.T. had ridden a bike or scooter through the station," though D.T. only had his skateboard on him at the time. *Id.* at ¶¶ 51, 52. D.T. was released after Torres accused him of disobeying lawful orders and made D.T. spread his legs. *Id.* at ¶¶ 53, 54.

As a result of this incident, D.T. suffered "multiple contusions, severe neck strain, and back pain." *Id.* at ¶ 55. D.T. also suffered "a loss of liberty and emotional trauma." *Id.* at ¶ 56.

### b. Procedural Background

On May 13, 2019, Plaintiff D.T. filed a complaint alleging ten claims for relief, including two which name the City of San Diego – Claim No. 6 for *Monell* relief and Claim No. 10 for Bane Act relief – as Defendant. ECF No. 1 at ¶¶ 96–109, 127–130. In addition to the facts pertaining to D.T.'s allegedly unlawful arrest, the complaint references three excessive force cases filed against MTS and a study published in 2014

3:19-cv-0901-GPC-KSC

by the American Civil Liberties Union ("ACLU") of San Diego and Imperial Counties detailing racially disparate car stops and searches conducted by SDPD. *Id.* at ¶¶ 100, 104; ACLU REPORT at 1.[1]

On June 7, 2019, Defendant City moved to dismiss D.T.'s *Monell* and Bane Act Claims, ECF No. 3, on the basis that D.T. had failed to "state a claim upon which relief can be granted." Fed. R. Civ. Pro. 12(b)(6). On August 6, 2019, Plaintiff filed a response to the City's motion and requested leave to file it as untimely, which the Court granted for good cause on August 14, 2019. ECF Nos. 10, 10-2, 11. On August 21, 2019, the City filed a reply. ECF No. 12.

## II.    Legal Standard on Motion to Dismiss

A 12(b)(6) motion compels the Court to dismiss a complaint, or part of a complaint, that fails "to state a claim upon which relief can be granted." Fed. R. Civ. Pro. 12(b)(6). To "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 566 U.S. 662, 677 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 678). Consequently, while "detailed factual allegations" are unnecessary, the complaint must contain more than "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

The Court must accept all factual allegations in the complaint as true and must draw all reasonable inferences from them in favor of the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). "It is not, however, proper to

---

[1] The Court has identified this report as ACLU OF SAN DIEGO AND IMPERIAL COUNTIES, *ACLU Analysis of San Diego Police Department Vehicle Stop Data* (May 13, 2014), at https://www.aclusandiego.org/wp-content/uploads/2014/05/ACLU-Data-Analysis-on-SDPD-Vehicle-Stop-Data.2014.05.13-1.pdf ("ACLU REPORT").

assume that the [Plaintiff] can prove facts that it has not alleged." *Associated Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). "[T]o be entitled to the presumption of truth, allegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In addition, "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *AE ex rel. Hernandez v. Cty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (citing *Starr*, 652 F.3d at 1216). The Court need not presume the validity of any "a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quotations omitted).

Generally, courts only consider the complaint itself on a motion to dismiss. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n. 19 (9th Cir. 1990). "However, material which is properly submitted as part of the complaint may be considered," *id.*, as long as the documents' authenticity is not questioned by the parties, *Fecht v. Price Co.*, 70 F.3d 1078, 1080 n.1 (9th Cir. 1995), superseded by statute on other grounds; *see also Branch v. Tunnell*, 14 F.3d 449, 453–54 (9th Cir. 1994), overruled on other grounds by *Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119, 1121 (9th Cir. 2002). Such documents may be considered, so long as they are referenced in the complaint, even if they are not physically attached to the pleading. *See Branch*, 14 F.3d at 453–54; *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Additionally, the court may consider materials which are judicially noticeable. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).

### III.    Plaintiff's *Monell* Claims

Plaintiff's claim for municipal liability incorporates multiple, distinct sub-claims arising from *Monell*. ECF No. 1 at 14–19. Plaintiff alleges, for example, that Defendant failed to train, supervise, discipline, and investigate its officers, and that Defendant acted

with deliberate indifference to enforce its policies. ECF No. 1 at ¶¶ 99(a)–(j). As the parties' arguments do not respond to each other one-to-one, the Court will address each of Plaintiff's claims separately and consider Defendant's applicable arguments in turn.

### a. General Legal Standard for § 1983 *Monell* Claims

Section 1983 prohibits any person acting "under color of [law]" from "depriv[ing]" another person of the "rights, privileges, or immunities" guaranteed by the Constitution and federal law. 18 U.S.C. § 1983. Section 1983 does not provide a substantive right and instead acts as a vehicle for "vindicating federal rights elsewhere conferred." *Doe v. City of San Diego*, 35 F. Supp. 3d 1233, 1238 (S.D. Cal. 2014) (citing *Graham v. Connor*, 490 U.S. 386, 393–94 (1989)); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). Section 1983 exists "to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights." *McDade v. West*, 223 F.3d 1135, 1139 (9th Cir. 2000) (citation omitted).

In § 1983 suits, municipalities cannot be held vicariously liable for the actions of their employees. *Monell*, 436 U.S. at 691. Instead, *Monell* liability arises in three different contexts. *See Rodriguez v. Cty. of Los Angeles*, 891 F.3d 776, 803 (9th Cir. 2018). First, a defendant can be found liable if a municipality's "policy or custom" becomes the "moving force" for a "constitutional violation" injuring the plaintiff. *Monell*, 436 U.S. at 694. Second, a municipality can incur *Monell* liability by failing to train or supervise its employees "in a manner that amounts to 'deliberate indifference' to a constitutional right." *Rodriguez*, 891 F.3d at 802 (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). Third, a municipality may also be liable if the tortfeasor "was an official with final policy-making authority or such an official ratified a subordinate [tortfeasor's] unconstitutional decision or action and the basis for it." *Id.* at 802–03 (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013)).

Here, Plaintiff's claims arise under the first two theories of liability identified by *Rodriguez*: (a) multiple City policies or customs causing a constitutional violation and (b) the City's failure to train, supervise, and discipline its officers in a manner that would

prevent constitutional violations. The Court finds that Plaintiff fails to state a claim as to each of these theories of liability under *Monell*.

### b. Defendant's Widespread Customs and Policies

"[I]t is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983." *Monell*, 436 U.S. at 694. A municipal "policy" exists when "a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986). A municipality may also be liable "if it has a policy of inaction and such inaction amounts to a failure to protect constitutional rights." *Oviatt v. Pearce*, 954 F.2d 1470, 1474 (9th Cir. 1992) (citing *City of Canton,* 489 U.S. at 388) A custom, on the other hand, is "a widespread practice that . . . is "so permanent and well settled as to . . . [accrue] the force of law.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167–68 (1970)).

A "proper analysis [of municipal polices and customs] requires [the separation of] two different issues when a § 1983 claim is asserted against a municipality: (1) whether plaintiff's harm was caused by a constitutional violation, and (2) if so, whether the city is responsible for that violation." *Duenas v. Cty. of Imperial*, No. 14-CV-2460-L, 2015 WL 12656291, at *2 (S.D. Cal. Mar. 9, 2015) (quoting *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992)). Hence, the demonstrated policy or custom need not be unconstitutional *per se*; it need only cause the constitutional violation suffered by the plaintiff. *Jackson v. Gates*, 975 F.2d 648, 654 (9th Cir. 1992).

Here, Plaintiff alleges that Defendant is liable for multiple "unconstitutional policies, practices and customs," including:

¶ 99(a). "Defendants [City of San Diego] COSD and MTS had knowledge, prior to and since this incident, of similar allegations of wrongful and unlawful battery, dishonesty and improper tactics, and corruption by SDPD and MTS employees, including the individual Defendants herein, and refused, with deliberate indifference, to enforce established administrative procedures to

insure public safety, protection of citizens' rights and the PLAINTIFF's liberty interests;"

¶ 99(f). "Defendants COSD and MTS condoned and participated in the practice of prosecuting groundless criminal charges for the purpose of insulating the COSD and MTS employees from civil liability and reducing or dismissing criminal charges against individuals in return for releasing them from civil liability;"

¶ 99(g). "Defendant COSD and MTS tacitly condones and encourages a conspiracy of silence among its employees for the purpose of concealing and furthering wrongful and illegal conduct;"

¶ 99(h). "Defendant COSD and MTS tacitly condones and encourages use of excess force on citizens;"

¶ 99(i). "Defendant COSD and MTS fostered and encouraged an atmosphere of lawlessness, abuse and misconduct, which by October 11, 2018, and thereafter, represented the unconstitutional policies, practices and customs of the COSD and MTS."

¶ 99(j). "Defendant COSD and MTS's arrest and unlawful use of force against D.T. is a part of a practice and pattern COSD and MTS's unlawful mistreatment and criminalization of African-American and other non-white persons."

ECF No. 1 at ¶ 99(a), (f)-(j). Defendant alleges that these policies each fail to pass muster on a motion to dismiss because they do not "provide reasonable notice as to what policy, custom or practice would be at issue in this litigation." ECF No. 3-1 at 5.

### 1. Policy on Excessive Force (Fourth Amendment Claim)

Plaintiff alleges that "Defendant COSD and MTS tacitly condones and encourages use of excess force on citizens." ECF No. 1 at ¶ 99(h). Defendant contends that this allegation is an "overly broad conclusory statement[]," unlinked to "any specific City policy or custom," and which does not allege "unconstitutional conduct." ECF No. 3-1 at 5. The question before the Court here is thus twofold: (1) did Plaintiff properly allege a constitutional violation and, if so, (2) did Plaintiff adequately allege that the City's policy caused that violation. Plaintiff fails on both counts.

As to the first question, a court assesses "the objective reasonableness of a particular use of force" by considering: "(1) 'the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted,' (2) 'the government's interest in the use of force,' and (3) the balance between 'the gravity of the intrusion on the individual' and 'the government's need for that intrusion.'" *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017) (en banc), cert. denied sub nom. *Lowry v. City of San Diego, Cal.*, 138 S. Ct. 1283 (2018) (quoting *Glenn v. Washington Cty.*, 673 F.3d 864, 871 (9th Cir. 2011)). That force must be imposed by an employee of the municipal defendant. *Monell*, 436 U.S. at 692 (noting that the language of § 1983 "plainly imposes liability on a government that, under color of some official policy, 'causes' *an employee* to violate another's constitutional rights") (emphasis added).

Here, Plaintiff's allegations do not pass muster under this standard. Plaintiff alleges that Torres was assisted by other MTS officers and security guards, and that these Doe Officers "slammed [him] to the ground," "exerted so much pressure on [his] body, that he lost consciousness," and "barricade[d]" his body from public view as Officer Torres "kicked [him] several times." ECF No. 1 at ¶¶ 12–35, 60(b)-(c), 60(g). Certainly, such violent conduct would be unreasonable when balanced against Plaintiff's allegations that he was an "unarmed minor" who at no point "show[ed] any sign of resisting the Defending Officers" and who was ticketed for "rid[ing] a bike or scooter through the station." ECF No. 1 at ¶¶ 51, 63, 65; *Lowry*, 858 F.3d at 1256. While Plaintiff also alleges that SDPD Officer 1 arrived after the Does Officers attacked him, ECF No. 1 at ¶ 36, Plaintiff does not allege that an SDPD officer contributed to, or was even present during, the Doe Officers' use of excessive force. Hence, there are insufficient allegations that SDPD officers used excessive force. ECF No. 3-1 at 4 ("the City does not employ MTS Officer Torres"); *Monell*, 436 U.S. at 692.

As to the second question, *Monell* requires that the Plaintiff establish a "causal link between the municipal action and the deprivation of federal rights." *Bd. of Cty. Comm'rs*

9

of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 404 (1997). "This inquiry has been described as a difficult one." *See Koistra v. Cty. of San Diego*, 310 F. Supp. 3d 1066, 1086 (S.D. Cal. 2018) (citing *City of Canton,* 489 U.S. at 385–86).

Thus, even if Plaintiff had alleged that an SDPD officer used excessive force, Plaintiff's reliance on three lawsuits and one report is insufficient to substantiate causation here. First, the three lawsuits at issue were litigated "against MTS" – not the City – and thus cannot serve to put the City on notice of an unconstitutional custom. ECF No. 1 at ¶¶ 100(a)-(c); *cf. Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011) (reversing district court's dismissal of complaint against Sheriff as it properly alleged a *Monell* custom by relying on incidents and reports involving the Sheriff's Department). Second, the report upon which Plaintiff relies pertains to unlawful traffic stops – not to the use of excessive force – and thus provides no basis from which to infer causation. ECF No. 1 at ¶ 103. Consequently, Plaintiff's allegations only rely on the incident at issue, and that incident provides no basis for causation because a custom "may not be predicated on isolated or sporadic incidents." *Trevino v. Gates*, 99 F.3d 911, 918 (9th Cir. 1996), holding modified by *Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001). Thus, Plaintiff's failure to allege "a pattern of similar constitutional violations" dooms his excessive force claim. *See Torbert v. Gore*, No. 14-CV-2911-BEN, 2016 WL 11447605, at *10 (S.D. Cal. Aug. 15, 2016), report and recommendation adopted, No. 14-CV-2911-BEN, 2016 WL 5844934 (S.D. Cal. Oct. 6, 2016).

Consequently, this Court **GRANTS** Defendant's motion to dismiss Plaintiff's sub-claim of a custom "tacitly condon[ing] and encourag[ing] use of excess force on citizens." ECF No. 1 at ¶¶ 99(h).

### 2. Policy on Racial Discrimination (Equal Protection Claim)

Here, Plaintiff alleges that "Defendant COSD and MTS's arrest and unlawful use of force against D.T. is a part of a practice and pattern COSD and MTS's unlawful mistreatment and criminalization of African-American and other non-white persons." *See* ECF No. 1 at ¶ 99(j). Defendant does not directly contest this allegation in their motion to

10

dismiss. ECF No. 3-1. Nonetheless, the Court reviews this allegation, as required under *Iqbal* and *Twombly*, and finds that Plaintiff does not properly plead causation.

"To succeed on a § 1983 equal protection claim, the plaintiffs must prove that the defendants acted in a discriminatory manner and that the discrimination was intentional." *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F.3d 736, 740 (9th Cir. 2000) (quoting *Federal Deposit Ins. Corp. v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991)). Discriminatory intent may be proved by direct or indirect evidence. *Arlington Heights v. Metro. Housing Dev. Corp.*, 429 U.S. 252, 266 (1977). If intentional discriminatory contact can be shown, the "City could then successfully defend against the charge only if it could demonstrate that the discriminatory treatment was justified." *Lowe v. City of Monrovia*, 775 F.2d 998, 1010 (9th Cir. 1985), amended, 784 F.2d 1407 (9th Cir. 1986).

The Court finds that Plaintiff has properly alleged a Fourteenth Amendment violation. D.T. asserts that Officer Torres called him a "nigger" during his arrest in the presence of an SDPD Doe officer. *Id.* at ¶ 42–44. While Officer Torres is not an employee of the City, D.T.'s claim, if true, could be attributable to Defendant vis-a-vis the SDPD Doe Officers' participation in D.T.'s arrest. Plaintiff also alleges that he was subjected to greater, unreasonable force relative to the other non-black juvenile in custody, which shows that D.T. was "treated unfavorably compared to others who are similarly situated." *Cuviello v. City & Cty. of San Francisco*, 940 F. Supp. 2d 1071, 1097 (N.D. Cal. 2013); *see also Warkentine v. Soria*, No. 13-CV-01550-LJO, 2014 WL 2093656, at *9 (E.D. Cal. May 19, 2014). For these reasons, plaintiff's allegations, if true, could support an inference that the officers' use of force during his arrest was intentionally discriminatory and racially motivated. *Reese*, 208 F.3d at 740; *Lowe*, 775 F.2d at 1002.

Nonetheless, Plaintiff's allegations in the complaint fail to establish how Defendant City's alleged custom caused the officers' discriminatory conduct. Again, the three lawsuits upon which Plaintiff relies were litigated "against MTS" – not the City – and thus cannot serve to put the City on notice of an unconstitutional custom. ECF No. 1

at ¶¶ 100(a)-(c); *Starr*, 652 F.3d at 1216. Plaintiff, moreover, does not assert that the lawsuits involved officers' use of racist epithets as is the case here. ECF No. 1 at ¶¶ 100(a)-(c); *cf. Guevara v. Cty. of Los Angeles*, No. CV 14-08120-DDP, 2015 WL 224727, at *4 (C.D. Cal. Jan. 15, 2015) (relying on factually-similar cases showing "a policy, custom, or practice of removing children from the home" in line with Plaintiff's Monell claim). Also, while the ACLU report provides some evidence of racially disparate practices by SDPD, it's applicability here is dubious because the report critiques distinguishable conduct – vehicle stops. ACLU REPORT at 1. In fact, the Report explicitly notes that comparable data is not available on pedestrian stops, as relevant here. *Id.* at 2.

Consequently, this Court **GRANTS** Defendant's motion to dismiss Plaintiff's sub-claim of a custom of "unlawful mistreatment and criminalization of African-American and other non-white persons." ECF No. 1 at ¶¶ 99(j).

### 3. Defendant's Customary "Conspiracy of Silence"

Plaintiff also alleges that Defendant "tacitly condones and encourages a conspiracy of silence among its employees for the purpose of concealing and furthering wrongful and illegal conduct." ECF No. 1 at ¶ 99(g). Defendant contends that Plaintiff "fails to link specific facts" to this allegation. ECF No. 3-1 at 5. The Court agrees with Defendant and finds that Plaintiff has not asserted a plausible sub-claim.

This is not the first time Defendant City faces accusations of a code or conspiracy of silence among its officers. *See, e.g.*, *Agent Anonymous v. Gonzalez*, No. 16-CV-0374-W, 2016 WL 8999471, at *5 (S.D. Cal. Dec. 14, 2016); *Lobaton v. City of San Diego*, No. 15-CV-1416-GPC, 2015 WL 7864186, at *3 (S.D. Cal. Dec. 2, 2015); *Baker v. Ensign*, No. 11-CV-2060-JAH, 2013 WL 1183323, at *7 (S.D. Cal. Mar. 21, 2013). And, certainly some cases have involved objective, admissible evidence of that code. *See, e.g.*, *Doe*, 35 F. Supp. 3d at 1244 (discussing expert reports alleging an existing code of silence among San Diego officers).

Plaintiff, however, neither makes similarly detailed allegations nor properly alleges causation. Plaintiff only asserts the presence of a code of silence, without highlighting

other cases, articles or reports to buttress his allegation. *See Novshadyan v. Cty. of Los Angeles*, No. CV 14-00814-JAK, 2014 WL 12701228, at *3 (C.D. Cal. Oct. 7, 2014) (finding Defendant County was on notice given relevant reports that pre-dated the harm suffered by plaintiff). In addition to the noted problems regarding the three cases and the ACLU report, these materials do not appear, on the face of the Complaint, to stem from a "code of silence." ECF No. 1 at ¶¶ 100(a)-(c), 103. Plaintiff also does not articulate how the alleged "conspiracy of silence" was the "moving force" behind the officers' decision to not report this incident. *See Doe*, 35 F. Supp. 3d at 1240, 1245 (finding at summary judgment an issue of fact as to whether the problem officer "thought he was impervious to the consequences of his misconduct" because of the "code of silence"); *Hyun Ju Park v. City & Cty. of Honolulu*, 292 F. Supp. 3d 1080, 1090 (D. Haw. 2018).

Consequently, this Court **GRANTS** Defendant's motion to dismiss Plaintiff's sub-claim of a customary "conspiracy of silence." ECF No. 1 at ¶¶ 99(g).

### 4. Policy on Unlawful Detentions (Fourth Amendment Claim)

Paragraph 99(a) of the complaint contains refers to a custom infringing on Plaintiff's "liberty interests." In light of Plaintiff's other references to his detention by the Doe Officers, the Court construes this paragraph of Plaintiff's *Monell* claim as alleging a custom of unlawfully detaining juveniles following pedestrian stops. *See* ECF No. 1 at ¶¶ 67–75. To survive a motion to dismiss, Plaintiff must (1) properly alleged a constitutional violation and (2) adequately allege that the City's policy caused that violation. Plaintiff succeeds as to the first element but fails on the second.

As to the first question, a person is detained "if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." *U.S. v. Mendenhall*, 446 U.S. 544, 553–54 (1980). A detention does not give rise to a § 1983 violation if the officer acted with probable case. *Lacy v. Cty. of Maricopa*, 631 F. Supp. 2d 1183, 1193 (D. Ariz. 2008) (quoting *Hutchinson v. Grant*, 796 F.2d 288, 290 (9th Cir. 1986)) (other quotations and citations omitted). "As long as the officers had some reasonable basis to believe [Defendant] had committed a crime, the arrest is

justified as being based on probable cause." *Blankenhorn v. City of Orange*, 485 F.3d 463, 473 (9th Cir. 2007) (quotations omitted). Even so, "an officer's actions that prolong a detention and are unrelated to the stop's purpose violate the Fourth Amendment, even if the initial detention is based on probable cause." *Hesterberg v. United States*, No. C-13-01265-JSC, 2013 WL 6020776, at *5 (N.D. Cal. Nov. 13, 2013) (citing *Illinois v. Caballes*, 543 U.S. 405, 418 (2005)).

Here, Plaintiff has adequately alleged that Defendant City's employees participated in an unlawful detention. Plaintiff alleges that "SDPD Officers" were present while D.T. was bound by "extremely tight handcuffs," "placed in the back of a patrol car for over 30 minutes," and told to "spread his legs." ECF No. 1 at ¶¶ 41, 47, 48, 54. Plaintiff alleges that the Doe Officers acted without probable cause. *Id.* at ¶ 72. Moreover, even if the Doe Officers had reason to initially stop Defendant for "riding a bike or scooter through the station," Plaintiff also asserts that they acted "without any legal justification" in continuing to detain him and that he "[n]ever resist[ed] or disobey[ed] any police order" while detained. *Id.* at ¶ 51, 54, 72. Thus, Plaintiff provides sufficient facts to adequately allege that the officers unlawfully detained him.

As to the second question, however, Plaintiff has not properly alleged a widespread custom, or defined how that custom caused the officers' conduct. First, Plaintiff's complaint shows "sporadic" police abuse not attributable to the City as a custom. *Trevino*, 99 F.3d at 918. Even if Plaintiff's three cited lawsuits involve "false arrests," they are, as noted, directed against MTS and not Defendant City. ECF No. 1 at 100(a)-(c). Likewise, the ACLU Report does not address unlawful detentions following pedestrian stops. ACLU Report at 1. Second, Plaintiff does not allege a "causal link" between a custom permitting unlawful detentions and the officers' conduct in this matter. *Raiser v. San Diego Cty.*, No. 19-CV-0751-GPC, 2019 WL 5535765, at *6 (S.D. Cal. Oct. 25, 2019) (quoting *Bryan Cty.*, 520 U.S. 397, 410 (1997)); *Hughey v. Drummond*, No. 14-CV-00037-TLN, 2017 WL 590265, at *12 (E.D. Cal. Feb. 14, 2017) (dismissing Monell claims on causation grounds even after finding officers' conduct might amount to

14

a detention). Plaintiff does not suggest that the officers acted pursuant to a specific directive or otherwise conformed to an existing custom.

Consequently, this Court **GRANTS** Defendant's motion to dismiss Plaintiff's sub-claim of a custom of unlawful detentions. ECF Nos. 1 at ¶¶ 99(a) (unlawful detention).

### 5. Other Alleged Policies

In addition to the allegation of unlawful detentions, *see supra* Section III.b.4, Plaintiff also alleges at Paragraph 99(a) that Defendant engaged in a policy of "refus[ing,] with deliberate indifference, to enforce established administrative procedures." *Id.* Relatedly, Plaintiff alleges that Defendant has a policy to "condone[s] . . . prosecuting groundless criminal charges . . . and reducing or dismissing criminal charges" in exchange for releasing officers from civil liability. ECF No. 1 at ¶ 99(f). Defendant claims that these allegations, among others, are too vague to survive a motion to dismiss, and the Court agrees. ECF No. 3-1 at 4–9.

Here, Plaintiffs' first allegation of an unconstitutional "administrative procedure[]" does not survive a motion to dismiss. ECF No. 1 at ¶ 99(a). Plaintiff seemingly refers to a specific municipal policy, i.e. the "administrative procedures," but fails to identify those procedures with any detail. *See Ranganath Saraswati v. Cty. of San Diego & Does 1-20*, No. 07-CV-1415 WQH, 2008 WL 11509033, at *4 (S.D. Cal. Apr. 23, 2008) (finding Plaintiff's claim was sufficiently specific where Plaintiff alleged (a) an "inadequate review procedures of reports" that were later discredited and (b) a policy of "failing to notify Department of Justice when a report of child abuse is subsequent proven to be unfounded"). Plaintiff also does not explain how these generic "administrative procedures" caused the alleged harms of "wrongful and unlawful battery, dishonesty and improper tactics, and corruption." ECF No. 1 at ¶¶ 96-109; *Saint Onge Orchids, LLC v. Cty. of San Diego*, No. 17-CV-0638-GPC, 2017 WL 2345789, at *4 (S.D. Cal. May 30, 2017) (requiring plaintiff to identify a policy causing the misconduct).

Similarly, Plaintiff's second allegation that Defendant has a custom or practice of bringing false prosecutions does not survive a motion to dismiss. While Plaintiff's

allegation is more specific as to Defendants' misconduct, Plaintiff does not refer to enough evidence to permit an inference of a "widespread practice" by a policy maker. *Praprotnik*, 485 U.S. 127. Plaintiff's three cited cases and the ACLU Report have no bearing on a claim of false prosecutions. Consequently, Plaintiff's only evidence of this custom is the instant litigation. *Cf. Salvi v. Cty. of San Diego*, No. 18-CV-1936 DMS, 2019 WL 1671001, at *10 (S.D. Cal. Apr. 17, 2019) (permitting a *Monell* claim to survive a motion to dismiss where Plaintiff alleged Defendant's misconduct "was not a one-time event"). Lastly, Plaintiff's conclusory allegation of "deliberate indifference" is insufficient. ECF No. 1 at 99(f). A municipality is "deliberately indifferent" when the need for more or different action "is so obvious, and the inadequacy [of the current procedure] so likely to result in the violation of constitutional rights, that the policy makers . . . can reasonably be said to have been deliberately indifferent to the need." *City of Canton*, 489 U.S. at 390; *Lee*, 250 F.3d at 682. Plaintiff does not allege how this standard is met with respect to the alleged policy of "prosecuting groundless criminal charges." ECF No. 1 at ¶ 99(f).

Consequently, this Court **GRANTS** Defendant's motion to dismiss these two sub-claims. ECF Nos. 1 at ¶¶ 99(a) (administrative policy), (f) (groundless prosecutions).

### c. Defendant's Failure to Train DOE Officers

Here, Plaintiff alleges that "Defendants COSD and MTS failed to adequately train its officers so as to avoid constitutional violations." ECF No. 1 at ¶ 99(e). Plaintiff relies, in part, on the findings of an ACLU report suggesting that "black drivers are stopped at a rate 2 times larger than their relative share of the driving population," and are "searched at three times the rate of white drivers." *Id.* at 103. Defendant contends that Plaintiff's failure-to-train allegation fails because Plaintiff did not allege any pattern of constitutional violations. ECF No. 3-1 at 7-8. Defendant argues also that the ACLU report is not sufficient because, despite the disparate numbers, an "officer conducting a stop is not, by itself, a constitutional violation" and the report is irrelevant because it pertains to motor vehicle stops. *Id.* The Court finds for Defendant as to this claim.

The "inadequacy of police training may serve as the basis for § 1983 liability." *City of Canton,* 489 U.S. at 388; *Price v. Sery*, 513 F.3d 962, 973 (9th Cir. 2008). To succeed on a failure-to-train theory, the Plaintiff must plead that the defendant acted with "deliberate indifference." *Anderson v. Warner*, 451 F.3d 1063, 1070 (9th Cir. 2006). Thus, a plaintiff must go further than merely "identify[ing] a custom or policy, attributable to the municipality, that caused his injury." *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016). The plaintiff must in addition show that a municipality had "actual or constructive notice" that the "omission in their training program" would cause "city employees to violate citizens' constitutional rights" and, nevertheless, "disregarded [that] known or obvious consequence." *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (quoting *Bryan Cty.*, 520 U.S. 397, 410 (1997)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Id.* (quotations omitted). "Mere negligence in training . . . does not give rise to a *Monell* claim." *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011).

As an initial matter, Plaintiff does not allege a "particular training deficiency" and "makes no mention of the . . . officers' training at all." *See Bagley v. City of Sunnyvale*, No. 16-CV-02250-LHK, 2017 WL 344998, at *16 (N.D. Cal. Jan. 24, 2017); *Howard v. Contra Costa* Cty., No. 13-CV-03626-NC, 2014 WL 824218, at *13 (N.D. Cal. Feb. 28, 2014) (stating claimant must point to "a particular kind of training [that] showed deliberate indifference"). Plaintiff does not assert, for example, that the City made a specific and deliberately indifferent decision with respect to the selection or design of a training program. Nor does the Plaintiff assert that the City's failure to conduct a specified training led to an officer's alleged constitutional violation. *Von Haar v. City of Mountain View*, No. 10-CV-02995-LHK, 2011 WL 782242, at *1, *5, *5 n.2 (N.D. Cal. Mar. 1, 2011) (denying motion to dismiss where Plaintiff alleged three specific area in which training was inadequate).

Further, what limited support Plaintiff offers is not sufficiently connected to

defendant's alleged failure to train its officers. Only one of the Plaintiff's cited cases involved an alleged "failure to train," and that case was brought against MTS, not the City. ECF No. 1 at ¶ 100(b). Plaintiff does not describe how that allegation "exemplif[ies]" his claim here. *Id.* Likewise, absent facts evincing a pattern of misconduct, Plaintiff's allegation "of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*." *J.K.G. v. Cty. of San Diego*, No. 11-CV-305-JLS, 2011 WL 5218253, at *9 (S.D. Cal. Nov. 2, 2011) (quoting *Okla. City v. Tuttle*, 471 U.S. 808, 823–24 (1985)).

Consequently, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's failure-to-train sub-claim. ECF No. 1 at ¶ 99(e).

### d. Defendant's Failure to Supervise DOE Officers

Here, Plaintiff alleges that "Defendants COSD and MTS failed to adequately supervise the actions of employees under its control." ECF No. 1 at ¶ 99(d). Defendant contends that Plaintiff's allegation lacks factual support and fails to allege any pattern of constitutional violations. ECF No. 3-1 at 7–8. The Court agrees.

A "government policy of inadequate . . . supervision may also give rise to § 1983 municipal liability." *J.K.G.*, 2011 WL 5218253, at *8 (citing *City of Canton*, 489 U.S. at 388). Claims for failure to supervise are reviewed under the same standard as claims for failure to train. *Estate of Mendez v. City of Ceres*, 390 F. Supp. 3d 1189, 1208 (E.D. Cal. 2019). Consequently, as with a failure-to-train claim, the alleged failure to supervise should be "sufficiently adequate" to evince a "deliberate indifference" on the part of the supervisor. *Dougherty v. City of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (quoting *Davis v. City of Ellensburg*, 869 F.2d 1230, 1235 (9th Cir. 1989)). The Plaintiff must also "demonstrate a causal link between the [inadequate supervision] and the deprivation of federal rights." *Yancy ex rel. Hawk v. California*, No. 15-CV-0580-JM, 2015 WL 4772807, at *3 (S.D. Cal. Aug. 12, 2015) (quoting *Bryan Cty.*, 520 U.S. at 403–04).

Plaintiff's allegation does not pass muster. Plaintiff does not specify *how* the City failed to supervise its employees. Plaintiff, moreover, fails to state sufficient facts to

support a plausible claim that Defendant acted with deliberate indifference while supervising its employees. Plaintiff also not assert that the Officer Torres had a "history of inappropriate behavior" of which the City was aware. *See Kaahu v. Randall*, No. CV 14-0266-HG, 2018 WL 472996, at *17 (D. Haw. Jan. 18, 2018) (permitting a failure-to-supervise claim to survive summary judgment given factual issues regarding the problem officer's prior misconduct). Plaintiff also fails to include instances of misconduct that could "constitute a pattern of violations . . .to which policymakers failed to respond or inadequately responded." *Estate of Mendez*, 390 F. Supp. 3d at 1208. Plaintiff cites to three incidents, which as noted in this opinion are not relevant, in part because Plaintiff does not address the incidents' timing and similarity, or the subsequent municipal inaction to those incidents. *Id.* at 1209–11.

Consequently, this Court **GRANTS** Defendant's motion to dismiss Plaintiff's failure-to-supervise sub-claim. ECF No. 1 at ¶ 99(d).

### e. Defendants' Failure to Discipline or Investigate Employee Violations and Subsequent Ratification of Misconduct

Here, Plaintiff alleges that "Defendants COSD and MTS refused to adequately discipline individual employees found to have committed similar acts of dishonesty and misconduct." ECF No. 1 at ¶ 99(b). Plaintiff also alleges that "Defendants COSD and MTS refused to completely and impartially investigate allegations of abuse and misconduct alleged to have been committed by SDPD and MTS employees." *Id.* at ¶ 99(c). In support of these allegations, Plaintiff alleges that "not one of the Defendant Officers involved in the aforementioned incident has been reprimanded or sanctioned by Defendant MTS or SDPD for their actions against [Plaintiff]." *Id.* at ¶ 108. Defendant contends that "Plaintiff has again failed to plead any facts showing a specific policymaker at the City made a conscious, affirmative choice to ratify the underlying conduct that is the subject of this case." ECF No. 3-1 at 9. Defendant is correct.

Courts of this circuit concurrently analyze claims that defendant failed to discipline its employees with claims that defendant ratified its employees' unconstitutional

behavior. *See Rabinovitz v. City of Los Angeles*, 287 F. Supp. 3d 933, 967 (C.D. Cal. 2018) (treating claims as interchangeable); *Garcia v. City of Imperial*, No. 08-CV-2357-BTM, 2010 WL 3911457, at *2 (S.D. Cal. Oct. 4, 2010) (same); *Peschel v. City of Missoula*, 686 F. Supp. 2d 1107, 1125 (D. Mont. 2009) (same). One element of these claims is often a failure to investigate such misconduct. *See Bagley*, 2017 WL 344998, at *16 (concurrently addressing alleged failure to "investigate and discipline"); *Orellana v. Cty. of Los Angeles*, No. CV-12-01944-MMM, 2013 WL 12122692, at *24–25 (C.D. Cal. Apr. 29, 2013), aff'd, 630 F. App'x 730 (9th Cir. 2016) (discussing allegation of failure to investigate in the context of a ratification claim); *Johnson v. Shasta Cty.*, 83 F. Supp. 3d 918, 933 (E.D. Cal. 2015) ("Ratification . . . can be shown by a municipality's post-event conduct, including its conduct in an investigation of the incident"). Thus, the Court analyses Plaintiff's failure-to-discipline and failure-to-investigate sub-claims together under a ratification theory.

A municipality may be subject to *Monell* liability under a ratification theory if an authorized policymaker approves a subordinate's decision and the basis for it. *Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999); *Larez v. City of Los Angeles*, 946 F.2d 630, 647 (9th Cir. 1991). The policy, if not express, can be inferred from multiple incidents. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1027 (9th Cir. 2015) ("A custom or practice can be inferred from evidence of repeated constitutional violations for which the errant municipal officers were not discharged or reprimanded.").

Where a failure-to-discipline claim relies on a single instance of misconduct, the claim must evince an "[e]xtreme factual situation." *See Garcia v. City of Imperial*, No. 08-CV-2357-BTM, 2010 WL 3911457, at *2 (S.D. Cal. Oct. 4, 2010) (citing *Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir.1985)). Thus, in most circumstances, the plaintiff must allege "something more than a *single* failure to discipline." *Haugen v. Brosseau*, 351 F.3d 372, 393 (9th Cir. 2003), overruled on other grounds by *Brousseau v. Haugen*, 543 U.S. 194 (2004) (emphasis added).

Here, Plaintiff's allegations are insufficiently pled to survive a motion to dismiss.

As with other § 1983 complaints filed in this circuit's district courts, Plaintiff does not allege how Defendant would have known of the officers' alleged misconduct or how Defendant "specifically approved of the [misconduct] and the basis for it." *See Herd v. Cty. of San Bernardino*, 311 F. Supp. 3d 1157, 1169 (C.D. Cal. 2018) (dismissing for failing to allege sufficient facts); *Victoria v. City of San Diego*, 326 F. Supp. 3d 1003, 1016 (S.D. Cal. 2018) (same); *cf. Lacy v. Cty. of San Diego*, No. 12-CV-624-MMA, 2012 WL 4111507, at *3 (S.D. Cal. Sept. 18, 2012) (finding complaint survived motion to dismiss where Plaintiff detailed police misconduct, asserted Defendant knew policy on disciplining wrongdoers was deficient, and claimed that ongoing violations without reprimand amounted to deliberate indifference).

Plaintiff's other cited cases are immaterial as to this claim as they do not address ratification claims against the City. ECF No. 1 at ¶ 100(a)-(c). Plaintiff's "sole" assertion that Defendant failed to investigate and discipline this incident does not tend to show a broader City policy to that effect. *Rabinovitz*, 287 F. Supp. 3d at 968; *Orellana*, 2013 WL 12122692, at *24 (finding City's decision not to discipline an officer after three accusations of misconduct was no basis to infer the defendant "ratified prior wrongful acts"). In addition, the facts of D.T.'s alleged assault, as described here, do not rise to an "extreme" level from which a departmental practice could be inferred. *Cf. Grandstaff*, 767 F.2d at 171 (permitting jury to infer a policy of failing to discipline where "five patrol units and six officers . . .without awaiting any hostile act or sound . . . poured their gunfire" at Defendant and his potential hostage with no effort "to avoid . . . harm[ing] innocent people").

Consequently, this Court **GRANTS** Defendant's motion to dismiss Plaintiff's failure-to-discipline and failure-to-investigate claims. ECF No. 1 at ¶ 99(b)-(c).

## IV.    PLAINTIFF'S BANE ACT CLAIM

### a.  Legal Standard for Bane Act Claim

The Bane Act provides a private cause of action against anyone who "interferes by threats, intimidation, or coercion, or attempts to interfere by threats, intimidation, or

coercion, with the exercise or enjoyment by an individual or individuals of rights secured by the Constitution or laws of the United States, or laws and rights secured by the Constitution or laws of California." Cal. Civ. Code § 52.1(a). The Bane Act requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Jones v. Kmart Corp.*, 949 P.2d 941, 944 (Cal. 1998). To obtain relief under this statute, a plaintiff must prove that a defendant tried to, or did, by the specified improper means, prevent the plaintiff from doing something that he had the right to do under the law, or force plaintiff to do something that he was not required to do under the law. *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 883 (Ct. App. 2007) (citing *Jones*, 949 P.2d at 944). The relevant inquiry under the Bane Act "is whether a reasonable person, standing in the shoes of the plaintiff, would have been intimidated by the actions of the defendants and have perceived a threat of violence." *Richardson v. City of Antioch*, 722 F. Supp. 2d 1133, 1147 (N.D. Cal. 2010).

### b. Plaintiff's Bane Act Claim

Here, Plaintiff alleges that Defendant "interfered by intimidation, or coercion with Plaintiff's rights." ECF No. 1 at ¶ 127. Plaintiff further alleges that this interfered with Plaintiff's "education needs" and the "enjoyment of his rights under federal and California law." *Id.* at ¶ 128. Defendant argues that Plaintiff fails to state a claim because the only known SDPD officer on the scene merely spoke to Plaintiff, and speech cannot substantiate a Bane Act violation. ECF No. 3-1 at 9 (citing Cal. Civ. Code § 52.1(j)). In response, Plaintiff concedes Bane Act claim and requests leave to amend "if the discovery reveals that [SDPD] officers were more intimately involved in the unlawful force against D.T." ECF No. 10-2 at 5.

Consequently, this Court **GRANTS** Defendant's motion to dismiss Plaintiff's Bane Act claim. ECF No. 1 at ¶ 127-130.

## V.    LEAVE TO AMEND PLAINTIFF'S CLAIMS

Having found that Plaintiff's *Monell* and Bane Act claims do not survive Defendant's motion to dismiss, the Court must now consider whether to grant leave to

amend the claims. The Ninth Circuit favors granting leave to amend with "extreme liberality." *Moss v. U.S. Secret Service*, 572 F.3d 962, 972 (9th Cir.2009); *Doe v. City of San Diego*, 198 F. Supp. 3d 1153, 1165 (S.D. Cal. 2016). Thus, in the absence of valid reasons to the contrary – "such as undue delay, bad faith," a "dilatory motive on the part of the movant," a "repeated failure to cure deficiencies," or "undue prejudice to the opposing party"– leave to amend the Complaint "should be freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also* Fed. R. Civ. P. 15(a)(2); *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1006 (9th Cir. 2010) (explaining that a court should grant leave unless the amendment would be futile).

Here, the Court grants Plaintiff's request for leave to amend all dismissed *Monell* and Bane Act claims so that Plaintiff may submit an amended complaint that states a plausible claim for relief. Fed. R. Civ. Pro. 12(b)(6).

## VI.     CONCLUSION

Based on the above, the Court **GRANTS** Defendant's motion to dismiss Plaintiff's *Monell* and Bane Act claims without prejudice. The Court **GRANTS** Plaintiff leave to amend the Complaint with facts to support these claims.

**IT IS SO ORDERED.**

**Dated:  November 8, 2019**

Hon. Gonzalo P. Curiel
United States District Judge