PETER L. CARR, IV (SBN 256104)
PCARR@THEPLCLAWGROUP.COM
NA'SHAUN L. NEAL (SBN 284280)
NNEAL@THEPLCLAWGROUP.COM
LAUREN K. MCRAE (SBN 331296)
LMCRAE@THEPLCLAWGROUP.COM
PLC LAW GROUP, APC
3756 SANTA ROSALIA DR., SUITE 326
LOS ANGELES, CA 90008
TELEPHONE: (310) 400-5890
FACSIMILE:  (310) 400-5895
ATTORNEYS FOR PLAINTIFF,
**D.T., A MINOR, BY AND THROUGH HIS**
**GUARDIAN AD LITEM, TANIKA TYLER**

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.T., a minor, by and through his Guardian Ad Litem, Tanika Tyler,<br><br>             Plaintiff,<br><br>       vs.<br><br>San Diego Metropolitan Transit System; City of San Diego, Javier Torres; and DOES 1 through 10 inclusive,<br><br>             Defendants. | Case No.: 3:19-cv-00901-RBM-KSC<br><br>**PLAINTIFF'S MEMORANDUM OF CONTENTION OF FACT AND LAW**<br><br>*Before the Hon. Ruth Bermudez Montenegro*<br><br>Courtroom: 5-B<br>Complaint Filed: 5/13/19<br><br>Chambers Rm: Suite 1010 |

## 1.    STATEMENT OF THE CASE, CLAIMS

This civil rights lawsuit was filed by Plaintiff Dae'Quon Tyler (D.T.), a minor by and through his guardian and mother, Tanika Tyler against the San Diego Metropolitan Transit System (SDMTS) and Code Compliance Inspector Javier Torres (Torres). D.T. contends that he suffered damages as a result of his detention and arrest by Inspector Torres at the City College Trolley Station ("Station") on October 11, 2018. D.T. alleges causes of action for (1) Excessive Force (42 U.S.C.



§ 1983); (2) Unlawful Detention (42 U.S.C. § 1983); (3) Equal Protection (42 U.S.C. § 1983); (4) Negligence (Cal. Gov. Code, §§ 815.2(a), 820(a)); (5) Battery; (6) Violation of Unruh Act (Cal. Civ. Code, § 51); and (7) Violation of Bane Act (Cal. Civ. Code § 52, 52.1).

     D.T. contends that Inspector Torres was negligent, utilized excessive force and committed battery when he determined that D.T. was loitering and pushed him while ordering him to leave the trolley station. When D.T. verbally requested that Inspector Torres not touch him, Plaintiff D.T contends that Inspector Torres retaliated against his right to free speech, utilized excessive force and committed battery when he forcibly detained D.T. by grabbing and tackling him to the ground and handcuffing him. Additionally, D.T. contends that Inspector Torres discriminated against him because a similarly situated Latino young male was treated differently when he was detained and arrested by Inspector Torres and that similarly situated Latino and Caucasian youth were not detained nor arrested. As a result of the actions of Defendants, D.T. has suffered acute physical injuries to his person and extreme emotional distress that persists up to the present time.

## 2.   CAUSES OF ACTIONS

     **Claims 1-6:** Plaintiff D.T. contends Defendant Inspector Torres violated Plaintiffs' constitutional rights under the United States Constitution under 42 U.S.C. § 1983 and 42 U.S.C. § 2000(d).

     **Elements:** 42 U.S.C. § 1983 provides that any person or persons, who under color of state law, deprives another of any rights, privileges or immunities secured by the Constitution or laws of the United States shall be liable to the injured party. *See* Ninth Circuit Model Jury Instruction § 9.1 (2017). Section 1983 "is not a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

     The elements of a Title VI intent claim derive from and are similar to the analysis of cases decided under the Fourteenth Amendment's Equal Protection



Clause and Title VII of the Civil Rights Act of 1964, as amended. Because the Title VI statutory prohibition on discrimination is based on the Equal Protection Clause, the constitutional analysis of intentional discrimination should be applied under Title VI. *See Grutter v. Bollinger*, 539 U.S. 306, 343–44 (2003) (citing *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 287 (1978) (opinion of Powell, J.) ("Title VI . . . proscribe[s] only those racial classifications that would violate the Equal Protection Clause or the Fifth Amendment.").

The elements of Plaintiff's § 1983 and § 2000d claims against the Inspector Torres and SDMTS are addressed below.

## A. Public Utilities Code § 120451 and San Diego MTS Ordinance § 13.5(S) are Unconstitutionally Vague

A criminal law (statute or ordinance) may be held unconstitutionally vague on two independent bases. First, it may fail to provide the kind of notice that will enable ordinary people to understand what conduct it prohibits. Second, it may lack minimal guidelines to govern law enforcement, thus permitting arbitrary or discriminatory enforcement of the law. *City of Chicago v. Morales*, 527 U.S. 41, 56 (1999); see also, *Kolender v. Lawson*, 461 U.S. 352, 357-358 (1983); *Papachristou v. City of Jacksonville*, 405 U.S. 156 (1972). Public Utilities Code ("PUC") § 120451 and San Diego MTS Ordinance 13.5(S) fail under both of these standards.

### 1. PUC § 120451 and SDMTS Ordinance § 13.5(S) Fail to Provide Adequate Notice of the Conduct it Criminalizes

"[T]he purpose of the fair notice requirement is to enable the ordinary citizen to conform his or her conduct to the law." *Morales*, 527 U.S. at 58; *Desertrain v. City of Los Angeles*, 754 F.3d 1147, 1155 (9th Cir. 2014). "A penal statute cannot require the public to speculate as to its meaning while risking life, liberty, and property in the process." *Desertrain*, 754 F.3d 1155.

///



PUC § 120451 provides:

"Violation of any ordinance, rule, or regulation enacted by the board prohibiting unauthorized operation or manipulation of transit facilities owned, controlled, or used by the board, or prohibiting unauthorized tampering or interference with, or loitering in or about, transit facilities owned, controlled, or used by the board, including, but not limited to, transit centers, rail stations, bus shelters, and bus stops on public and private property, is an infraction punishable by a fine not exceeding fifty dollars ($50), except that such a violation by a person, after the first conviction under this section, is a misdemeanor punishable by a fine not exceeding five hundred dollars ($500) or by imprisonment not exceeding six months, or by both that fine and imprisonment."

SDMTS Ordinance § 13.5 codifies prohibited actions on or about a transit facility. Specifically, SDMTS Ordinance § 13.5(S) provides: "No person shall loiter in the immediate vicinity of any posted property."

Both PUC § 120451 and SDMTS Ordinance § 13.5(S) are unconstitutionally vague because they do not define or describe "loitering". When is a person "loitering"? Indeed, one wonders how an ordinary citizen would know whether he is "loitering". According to Defendant Officer Torres, "Once [an individual misses] two bus movements, two train movements traveling in the opposite direction, they are considered loitering." Officer Javier Torres Depo. Tr., 28:2-6. Importantly, neither PUC § 120451 or SDMTS Ordinance § 13.5(S) describe "loitering" as missing two bus/train movements traveling in opposition directions. One can readily see that PUC § 120451 and SDMTS Ordinance § 13.5(S) fail to give the ordinary citizen adequate notice of what conduct constitutes "loitering". *Morales*, 527 U.S. at 56. Instead, pedestrians "are left guessing as to what behavior would subject them to citation and arrest by an officer." *Desertrain*, 754 F.3d at 1155. For these reasons, PUC § 120451 and SDMTS Ordinance § 13.5(S) are unconstitutionally vague.



PLAINTIFF'S MEMORANDUM OF CONTENTION OF FACT AND LAW

2. *PUC § 120451 and SDMTS Ordinance § 13.5(S) Fail to Provide Any Guidelines for Law Enforcement, Thus Allowing Arbitrary Enforcement*

The second way that a criminal law may be unconstitutionally vague is where it fails to provide those who are charged with enforcing the ordinance with any clear criteria for what conduct would violate the statute. *Morales*, 527 U.S. at 56.

When enacting a criminal ordinance, a legislative body must establish minimal guidelines to govern law enforcement personnel who are charged with enforcing it. *Kolender v. Lawson*, 461 U.S. 354, 358 (1983); *Morales*, 527 U.S. at 60-61. If an ordinance lacks such guidelines, and thereby "entrusts lawmaking to the moment-to-moment judgment of the policeman on the beat," it is unconstitutionally vague. *Kolender*, 461 U.S. at 359; *Morales*, 527 U.S. at 60-61; *Desertrain*, 754 F.3d at 1156-1157.

Such statutes are unconstitutionally vague because they leave the interpretation of the ordinance up to individual officers, thus inviting arbitrary or discriminatory enforcement of the ordinance. *Desertrain*, 754 F.3d at 1158; *Papachristou*, 405 U.S. at 162.

Here, PUC § 120451 and SDMTS Ordinance § 13.5(S) provide no guidelines for transit officers to determine when a person is "loitering". It is simply up to each individual officer's subjective interpretation. This is shown by Defendant Officer Torres' admitted interpretation of loitering as missing two bus/train movements traveling in opposition directions. Quite notably, Officer Torres could not point to any written material provided by Metropolitan Transit Services or any training material that codified missing bus/train movements as "loitering". Moreover, Officer Torres' interpretation of "loitering" is not found in any of the policies and procedures produced by Metropolitan Transit Services.

Again, what constitutes "loitering" under PUC § 120451 and SDMTS



1   Ordinance § 13.5(S) is up to each officer's interpretation.  Thus, both laws are

2   "impermissibly vague because they fail to establish standards for the police and

3   public that are sufficient to guard against the arbitrary deprivation of liberty

4   interests."  *Morales*, 527 U.S. at 52; *Kolender*, 461 U.S. at 358.

5        Like the ordinances at issue in *Morales*, *Kolender*, *Papachristou* and

6   *Desertrain*, PUC § 120451 and SDMTS Ordinance § 13.5(S) fail to define or

7   describe "loitering" and fail to provide any guidelines for law enforcement as to

8   when someone is "loitering", leaving the interpretation of both PUC § 120451 and

9   SDMTS Ordinance § 13.5(S) to each individual officer.  For these reasons, PUC §

10  120451 and SDMTS Ordinance § 13.5(S) are unconstitutionally vague.

11        **B.  <u>First Amendment Violation (Claim 5)</u>:** Under the First Amendment,

12  a person has the right to be free from retaliation for engaging in free speech. In

13  order to prove Defendants SDMTS and Inspector Torres deprived the Plaintiff D.T.

14  of his First Amendment rights, the plaintiff must prove the following additional

15  evidence by a preponderance of the evidence:

16        1.    Plaintiff D.T. was engaged in a constitutionally protected activity;

17        2.    Defendant Inspector Torres' actions against Plaintiff D.T. would chill

18              a person of ordinary firmness from continuing to engage in the

19              protected activity; and

20        3.    Plaintiff D.T.'s protected activity was a substantial or motivating

21              factor in the defendant's conduct.

22  *See* Ninth Circuit Model Jury Instruction § 9.11.

23        Inspector Torres did not have the legal authority to order Plaintiff to leave

24  the station.  In his deposition, Inspector Torres testified that he made physical

25  contact with D.T. because he suspected him of loitering pursuant to Public Utilities

26  Code ("PUC") 120451 and to order him to leave the premises. The Supreme Court

27  has held that loitering in a public space for innocent purposes is protected by the

28  Fourteenth Amendment. *City of Chi. v. Morales*, 527 U.S. 41, 53 (1999).



Additionally, the California Penal Code only makes it a crime to loiter in public spaces if there is an intent to commit prostitution.  California *Penal Code* section 653.22.  California *Penal Code* section 653.20(c) defines loitering as "delay[ing] or linger[ing] without a lawful purpose for being on the property and for the purpose of committing a crime as opportunity may be discovered.  D.T. was at the station for innocent purposes. He had a valid metro pass card and was waiting for some friends to arrive. Accordingly, Inspector Torres' order for D.T. to leave the station was without legal authority and had no legal authority to make physical contact with D.T.  Inspector Torres' detainment and arrest because D.T. told him not to touch him violates his First Amendment right.

Damages:

D.T. seeks compensatory damages predicated on physical injuries to his person and extreme emotional distress that persists up to the present time and attorney's fees pursuant to 42 U.S.C. § 1988.

## C. Fourth Amendment Violation – Unreasonable Seizure (Claim 2):

Under the Fourth Amendment, a person has the right to be free from an unreasonable seizure of his person. In order to prove that Defendants SDMTS and Inspector Torres deprived Plaintiff D.T. of this Fourth Amendment right, the plaintiff must prove the following additional elements by a preponderance of the evidence:

1. Defendant Inspector Torres seized the Plaintiff D.T.'s person;

2. In seizing Plaintiff D.T.'s person, Defendant Inspector Torres acted intentionally; and

3. The seizure was unreasonable.

*See* Ninth Circuit Model Jury Instruction § 9.20.

Inspector Torres did not have the legal authority to order Plaintiff to leave the station.  In his deposition, Inspector Torres testified that he approached plaintiff because he suspected him of loitering pursuant to Public Utilities Code ("PUC")



-7-
PLAINTIFF'S MEMORANDUM OF CONTENTION OF FACT AND LAW

120451. The Supreme Court has held that loitering in a public space for innocent purposes is protected by the Fourteenth Amendment. *City of Chi. v. Morales*, 527 U.S. 41, 53 (1999).  Additionally, the California Penal Code only makes it a crime to loiter in public spaces if there is an intent to commit prostitution.  California Penal Code section 653.22.  California Penal Code section 653.20(c) defines loitering as "delay[ing] or linger[ing] without a lawful purpose for being on the property and for the purpose of committing a crime as opportunity may be discovered. D.T. was at the station for innocent purposes. He had a valid metro pass card and was waiting for some friends to arrive. Accordingly, Inspector Torres' order for D.T. to leave the station was without legal authority and his detainment and arrest because he did not immediately follow those orders was in violation of his Fourth Amendment right.

<u>Damages</u>:

D.T. seeks compensatory damages based on the physical injuries to his person and extreme emotional distress that persists up to the present time, punitive damages against Defendant Inspector Torres and attorney's fees pursuant to 42 U.S.C. § 1988.

**D. <u>Fourth Amendment Violation – Excessive Force (Claim 1)</u>:**

Under the Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. Although the facts known to the officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant to your inquiry.

In determining whether the officer used excessive force in this case, consider all of the circumstances known to the officer on the scene, including:

1.      Whether Plaintiff D.T. had committed a crime;



2.  Whether there was probable cause for a reasonable officer to believe that Plaintiff D.T. had committed a crime;

3.  The nature of the crime or other circumstances known to Inspector Torres at the time force was applied;

4.  Whether Plaintiff D.T. posed an immediate threat to the safety of Inspector Torres or to others;

5.  Whether Plaintiff D.T. was actively resisting arrest or attempting to evade arrest by flight;

6.  The amount of time Officer Torres had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

7.  The type and amount of force used; and

8.  Whether a reasonable officer would have or should have accurately perceived a mistaken fact.

*See* Ninth Circuit Model Jury Instruction § 9.25.

Inspector Torres did not have the legal authority to make physical contact with D.T. nor detain nor arrest D.T.  In his deposition, Inspector Torres testified that he approached plaintiff because he suspected him of loitering pursuant to Public Utilities Code ("PUC") 120451. The Supreme Court has held that loitering in a public space for innocent purposes is protected by the Fourteenth Amendment. *City of Chi. v. Morales*, 527 U.S. 41, 53 (1999).  Additionally, the California Penal Code only makes it a crime to loiter in public spaces if there is an intent to commit prostitution.  California Penal Code section 653.22.  California Penal Code section 653.20(c) defines loitering as "delay[ing] or linger[ing] without a lawful purpose for being on the property and for the purpose of committing a crime as opportunity may be discovered.  D.T. was at the station for innocent purposes. He had a valid metro pass card and was waiting for some friends to arrive. Accordingly, Inspector Torres' order for D.T. to leave the station was without legal authority and any



force used to detain or arrest D.T. was excessive because D.T. had not committed a crime nor was D.T. engaged in the commission of a crime.

<u>Damages</u>:

D.T. seeks compensatory damages based on the physical injuries to his person and extreme emotional distress that persists up to the present time, punitive damages against Defendant Inspector Torres and attorney's fees pursuant to 42 U.S.C. § 1988.

**E. <u>Fourteenth Amendment Violation – Intentional Discrimination /Disparate Treatment (Claims 3 and 4):</u>**

As to the plaintiff's claim that his race was a motivating factor for the defendant's decision to physically abuse and/or falsely detain him, the plaintiff has the burden of proving both of the following elements by a preponderance of the evidence:

1.    the plaintiff was physically abused and/or falsely detained by the defendant; and

2.    the plaintiff's race was a motivating factor in the defendant's decision to physically abuse and/or falsely detain the plaintiff.

*See* Ninth Circuit Model Jury Instruction § 10.3.

Inspector Torres did not have the legal authority to order D.T. to leave the station or to detain and arrest him.  D.T. was physically touched by Inspector Torres and ordered to leave the metro station when he was lawfully on the premises. He further was detained and arrested when he did not comply. The incident was caught on Inspector Torres' body camera. Of the youth who were on body camera footage, D.T. is the only African-American and the other youth are Caucasian and Latino. Similarly situated Latino and Caucasian youth were asked to leave but not detained nor arrested.  And when a Latino young male was detained and arrested, he was not thrown to the ground nor forced to sit on the ground after being handcuffed.



<u>Damages</u>:

D.T. seeks compensatory damages based on the physical injuries to his person and extreme emotional distress that persists up to the present time and attorney's fees pursuant to 42 U.S.C. § 1988

**F.  <u>Bane Act (California Civ. Code § 52.1)(Claim 10):</u>**

Plaintiff D.T. claims that Inspector Torres intentionally interfered with his civil rights by threats, intimidation, or coercion. To establish this claim, Plaintiff D.T. must prove all of the following:

1.  Defendant Inspector Torres acted violently against Plaintiff D.T.'s lawful right to use the public metro station and retaliated against D.T. for having exercised his First Amendment right to protest the excessive force being subjected to him;

2.  That Defendant Inspector Torres intended to deprive Plaintiff D.T. of his enjoyment of the interests protected by the First Amendment right;

3.  That Plaintiff D.T. was harmed; and

4.  That Defendant Inspector Torres' conduct was a substantial factor in causing Plaintiff D.T.'s harm.

*See* Judicial Council of California Civil Jury Instructions (2020 edition), No. 3066.

Inspector Torres did not have the legal authority to make physical contact with D.T. nor detain nor arrest D.T.  In his deposition, Inspector Torres testified that he approached plaintiff because he suspected him of loitering pursuant to Public Utilities Code ("PUC") 120451. The Supreme Court has held that loitering in a public space for innocent purposes is protected by the Fourteenth Amendment. <u>*City of Chi. v. Morales*</u>, 527 U.S. 41, 53 (1999).  Additionally, the California Penal Code only makes it a crime to loiter in public spaces if there is an intent to commit prostitution.  California Penal Code section 653.22.  California Penal Code section 653.20(c) defines loitering as "delay[ing] or linger[ing] without a lawful purpose



PLAINTIFF'S MEMORANDUM OF CONTENTION OF FACT AND LAW

for being on the property and for the purpose of committing a crime as opportunity may be discovered. D.T. was at the station for innocent purposes. He had a valid metro pass card and was waiting for some friends to arrive. Accordingly, Inspector Torres' order for D.T. to leave the station was without legal authority and any force used to detain or arrest D.T. was excessive because D.T. had not committed a crime nor was D.T. engaged in the commission of a crime.

<u>Damages</u>:

D.T. seeks compensatory damages based on the physical injuries to his person and extreme emotional distress that persists up to the present time, punitive damages against Defendant Inspector Torres and attorney's fees pursuant to California Civil Code § 52.1(h).

### G. <u>Unruh Civil Rights Act (Cal. Civ. Code §§ 51 & 52)(Claim 9)</u>:

Plaintiff D.T. claims that Defendant Inspector Torres denied him full and equal access to the metro station because of his race. To establish this claim, Plaintiff D.T. must prove all of the following:

1. That Defendant Inspector Torres denied equal access to the metro station to Plaintiff D.T.;

2. That a substantial motivating reason for Defendant Inspector Torres' conduct was Plaintiff D.T.'s race;

3. That Plaintiff D.T. was harmed; and

4. That Defendant Inspector Torres' conduct was a substantial factor in causing Plaintiff D.T.'s harm.

*See* Judicial Council of California Civil Jury Instructions (2020 edition), No. 3060.

Inspector Torres did not have the legal authority to make physical contact with D.T. nor detain nor arrest D.T.  D.T. was physically touched by Inspector Torres and ordered to leave the metro station when he was lawfully on the premises. He further was detained and arrested when he did not comply. The



incident was caught on Inspector Torres' body camera. Of the youth who were on body camera footage, D.T. is the only African-American and the other youth are Caucasian and Latino. Similarly situated Latino and Caucasian youth were asked to leave but not detained nor arrested.  And when a Latino young male was detained and arrested, he was not thrown to the ground nor forced to sit on the ground after being handcuffed.

Damages:

D.T. seeks compensatory damages the physical injuries to his person and extreme emotional distress that persists up to the present time and attorney's fees pursuant to California Civil Code § 52.1(h).

### H. <u>Negligence (Cal. Govt. Code §§ 815.2(a), 820(a))(Claim 7):</u>

Plaintiff D.T. claims that he was negligently harmed by Defendant Inspector Torres. To establish this claim, Plaintiff D.T. must prove all of the following:

1. That Defendant Inspector Torres was negligent;

2. That Plaintiff D.T. was harmed; and

3. That Defendant Inspector Torres' negligence was a substantial factor in causing Plaintiff D.T.'s harm.

*See* Judicial Council of California Civil Jury Instructions (2020 edition), No. 400.

Inspector Torres did not have the legal authority to make physical contact with D.T. nor detain nor arrest D.T.  In his deposition, Inspector Torres testified that he approached plaintiff because he suspected him of loitering pursuant to Public Utilities Code ("PUC") 120451. The Supreme Court has held that loitering in a public space for innocent purposes is protected by the Fourteenth Amendment. Additionally, the California Penal Code only makes it a crime to loiter in public spaces if there is an intent to commit prostitution.  D.T. was at the station for innocent purposes. He had a valid metro pass card and was waiting for some friends to arrive. Accordingly, Inspector Torres' order for D.T. to leave the station was without legal authority and any force used to detain or arrest D.T. was



excessive because D.T. had not committed a crime nor was D.T. engaged in the commission of a crime.

Damages:

D.T. seeks compensatory damages based on the physical injuries to his person and extreme emotional distress that persists up to the present time.

## I. **Battery by a Peace Officer (Claim 8):**

Plaintiff D.T. claims that Defendant Inspector Torres harmed him by using unreasonable force to detain him. To establish this claim, Plaintiff D.T. must prove all of the following:

1.    That Defendant Inspector Torres intentionally touched Plaintiff D.T. or caused Plaintiff D.T. to be touched;

2.    That Defendant Inspector Torres used unreasonable force to detain Plaintiff D.T.;

3.    That Plaintiff D.T. did not consent to the use of that force;

4.    That Plaintiff D.T. was harmed; and

5.    That Defendant Inspector Torres' use of unreasonable force was a substantial factor in causing Plaintiff D.T.'s harm.

A police officer may use reasonable force to detain a person when the officer has reasonable cause to believe that that person has committed a crime.  In deciding whether Defendant Inspector Torres used unreasonable force, you must determine the amount of force that would have appeared reasonable to a police officer in Defendant Inspector Torres' position under the same or similar circumstances. You should consider, among other factors, the following:

1.    The seriousness of the crime at issue;

2.    Whether Plaintiff D.T. reasonably appeared to pose an immediate threat to the safety of Defendant Inspector Torres or others; and

3.    Whether Plaintiff D.T. was actively resisting detention or attempting to evade detention.

*See* Judicial Council of California Civil Jury Instructions (2020 edition), No. 1305.

Inspector Torres did not have the legal authority to make physical contact with D.T. nor detain nor arrest D.T.  In his deposition, Inspector Torres testified that he approached plaintiff because he suspected him of loitering pursuant to Public Utilities Code ("PUC") 120451. The Supreme Court has held that loitering in a public space for innocent purposes is protected by the Fourteenth Amendment. *City of Chi. v. Morales*, 527 U.S. 41, 53 (1999).  Additionally, the California Penal Code only makes it a crime to loiter in public spaces if there is an intent to commit prostitution.  California Penal Code section 653.22.  California Penal Code section 653.20(c) defines loitering as "delay[ing] or linger[ing] without a lawful purpose for being on the property and for the purpose of committing a crime as opportunity may be discovered.  D.T. was at the station for innocent purposes. He had a valid metro pass card and was waiting for some friends to arrive. Accordingly, Inspector Torres' order for D.T. to leave the station was without legal authority and any force used to detain or arrest D.T. was excessive because D.T. had not committed a crime nor was D.T. engaged in the commission of a crime.

Damages:

D.T. seeks compensatory damages based on the physical injuries to his person and extreme emotional distress that persists up to the present time and punitive damages against Defendant Inspector Torres.

### J.   Scope of Employment - Peace Officer's Misuse of Authority:

Plaintiff D.T. must prove that Defendant Inspector Torres was acting within the scope of his employment when Plaintiff D.T. was harmed.

The conduct of a peace officer is within the scope of his employment as a peace officer if all of the following are true:

(a)   The conduct occurs while the peace officer is on duty as a peace officer;



PLAINTIFF'S MEMORANDUM OF CONTENTION OF FACT AND LAW

(b)     The conduct occurs while the peace officer is exercising his authority as a peace officer; and

(c)     The conduct results from the use of his authority as a peace officer.

*See* Judicial Council of California Civil Jury Instructions (2020 edition), No. 3721.

Inspector Torres was in full uniform and operated in the scope of his employment with Defendant SDMTS when he approached and made contact with D.T.  However, Inspector did not have the legal authority to make physical contact with D.T. nor detain nor arrest D.T.  In his deposition, Inspector Torres testified that he approached plaintiff because he suspected him of loitering pursuant to Public Utilities Code ("PUC") 120451. The Supreme Court has held that loitering in a public space for innocent purposes is protected by the Fourteenth Amendment. *City of Chi. v. Morales*, 527 U.S. 41, 53 (1999).  Additionally, the California Penal Code only makes it a crime to loiter in public spaces if there is an intent to commit prostitution.  California Penal Code section 653.22.  California Penal Code section 653.20(c) defines loitering as "delay[ing] or linger[ing] without a lawful purpose for being on the property and for the purpose of committing a crime as opportunity may be discovered.  D.T. was at the station for innocent purposes. He had a valid metro pass card and was waiting for some friends to arrive. Accordingly, Inspector Torres' order for D.T. to leave the station was without legal authority and any force used to detain or arrest D.T. was excessive because D.T. had not committed a crime nor was D.T. engaged in the commission of a crime.

Damages:

D.T. seeks compensatory damages based on the physical injuries to his person and extreme emotional distress that persists up to the present time and attorney's fees pursuant to California Civil Code § 52.1(h).

**3.     Witnesses List:**

**a.     Witnesses Expected to be Called at Trial**



1        1)     Tanika Tyler is the mother of D.T. and will discuss the damages suffered by D.T.  This witness can be contacted through counsel for Plaintiff;

2)     D.T., the plaintiff, will discuss the facts giving rise to the causes of action and the resulting damages. This witness can be contacted through his counsel;

3)     SDMTS Code Compliance Inspector Javier Torres is a defendant and the inspector who detained, arrested and cited Plaintiff D.T.  He will discuss the facts giving rise to the arrest and use of force, as well as his employment, training, policies and procedures as a Code Compliance Inspector. This witness can be contacted through his counsel;

4)     Manuel Guaderrama is the former SDMTS Director of Security/Chief who will discuss SDMTS' policies/training regarding detentions, arrests and use of force, as well as the actions of Inspector Torres. This witness can be contacted through counsel for Defendants;

5)     Al Stiehler is the current SDMTS Director of Transit Security and Passenger Safety, who will testify regarding SDMTS's policies/training/ procedures regarding Code Compliance Inspectors. This witness can be contacted through counsel for Defendants;

6)     Jeremiah Johnson is SDMTS Transit Enforcement: Security Administrator who is responsible for maintenance/operation of station surveillance video and body camera recordings who will provide the requisite foundation for introduction of the station surveillance and BCR videos. This witness can be contacted through counsel for Defendants;

7)     Transit System Security (TSS) Officer Clinton Cardinez is a contract security officer employed by Allied Universal Protection Services who was working with Officer Torres and will discuss the facts/circumstances giving rise to the detention and arrest of Plaintiff D.T. This witness can be contacted through counsel for Defendants;

8)  Damontae Hill was a patron at a SDMTS train station when he was detained and arrested by Defendant Torres on October 30, 2019, for loitering and filed a complaint against Defendant Torres. This witness can be contacted at 2750 Wheatstone Street, #31, San Diego, CA 92111;

9)  Timothy Curran is the SDMTS Transit Enforcement, Deputy Director who will testify regarding the Uniformed School Detail assigned to the City College Station and Inspector Torres' conduct/performance and compliance with SDMTS training, instruction, policies and procedures. This witness can be contacted through counsel for Defendants;

10)  Corwin Taylor is the SDMTS Transit Enforcement, Communications Lieutenant who was on duty at the time of the incident and received all pertinent dispatches and calls. This witness can be contacted through counsel for Defendants;

11)  Isaiah Alexander is the SDMTS Transit Enforcement, Code Compliance Sergeant who was a witness to the incident and supervised the School Detail assigned to the City College Station. This witness can be contacted through counsel for Defendants;

12)  Dennis Jackson is a Transit System Security (TSS) Lieutenant employed by Allied Universal Protection Services who will testify regarding the training, policies and procedures of TSS officers contracted to SDMTS. This witness can be contacted through counsel for Defendants;

13)  SDPD Haines is an officer with the San Diego Police Department, who responded to the scene and interacted with Plaintiff D.T. at the scene.  This witness can be contacted at 1401 Broadway, San Diego, California 92101, Tel:  (619) 531-2736;

14)  Gabriel Jesus Castillo is a percipient witness on the date of the incident who was likewise detained, arrested and cited by Inspector Torres. This witness can be contacted at 5512 Countryside Drive, San Diego, California 92115;



-18-
PLAINTIFF'S MEMORANDUM OF CONTENTION OF FACT AND LAW

**b.     Expert Witnesses Expected to be Called at Trial.**

15)    Roger Clark is plaintiff's police practices expert and will discuss the applicable police practices and standards related to Defendants' liability for the subject incident. This expert can be contacted at 10207 Molina Road, Santee, CA 92071;

16)    Sheryl Monaughan, Ph.D. Psychologist, QME is Plaintiff's expert witness who will discuss the emotional damages suffered by Plaintiff. This expert can be contacted at 10736 Jefferson Blvd., #505, Culver City, CA 90230, Tel:  (310) 313-0999.

**c.     List of Additional Witnesses Not Expected to be Called but reserved**

17)    Kent E.W. Karras, DC, QME is D.T.'s treating physician and will discuss the damages suffered by D.T. This witness can be contacted at 7733 Palm Street Ste. #105, Lemon Grove, CA, 91945, Tel:  (619) 461-4652;

18)    Rural Metro No. 7 paramedics/EMTs who responded to the scene on October 11, 2018. This witness can be contacted at 3750 Kearny Villa Road, San Diego, California 92123, Tel:  (619) 280-6060.

**4.     EXHIBIT LIST**

| Number | Date Marked | Date Admitted | Description |
|--------|-------------|---------------|-------------|
| 1.     |             |               | Metropolitan Transit System Transit Enforcement, Standard Operations and Procedures Manual Parts 1 and 2 issued July 2017 (identified as Exhibits "K" and "K P2" to Defendant San Diego Metropolitan Transit System's Responses to Requests for Production of Documents, Set One, Propounded by Plaintiff). These are the policies and |



| | | | |
|---|---|---|---|
| | | | procedures of SDMTS |
| 2. | | | City College Station surveillance video (dated 10/11/2018) footage related to the subject incident. The video captures the incident. |
| 3. | | | Body CAM Videos No. 1 re: CCI Javier Torres |
| 4. | | | Body CAM Videos No. 2 re: CCI Javier Torres |
| 5. | | | Incident Report #18003644 (dated 10/11/2018; CCI Javier Torres); |
| 6. | | | Supplemental Narrative re: Incident Report #18003644 (dated 10/11/2018; Clinton Cardinez) |
| 7. | | | Supplemental Narrative re: Incident Report #18003644 (dated 10/11/2018; CCI Javier Torres); |
| 8. | | | Plaintiff's medical records related to the treatment of his injuries arising from the subject incident by Rady Children's Hospital San Diego on 10/11/2018 |
| 9. | | | Plaintiff's medical records related to the treatment of his injuries arising from the subject incident by Kent E.W. Karras, DC, QME from 12/03/2018 to 01/22/2019 |
| 10. | | | Psychological Evaluation Report and Findings created by Sheryl Monaughan, Ph.D. Psychologist, QME related to Plaintiff's mental and emotional damages caused by the subject incident |



| | | | |
|---|---|---|---|
| 11. | | | Roger Clark's January 22, 2021 Expert Report related to the subject incident |
| 12. | | | Citation # Z569884 (dated 10/11/2018) issued to Plaintiff for violating Public Utilities Code § 120451 and Penal Code § 640(b)(5) |
| 13. | | | Government Claim Form re: Tanika Tyler, Guardian Ad Litem for D.T. (minor) |
| 14. | | | SDMTS rejection of Plaintiff's Government Claim for Damages dated 03/06/2019 |
| 15. | | | Narrative of the Subject Incident written by Plaintiff dated October 11, 2018 |
| 16. | | | Plaintiff's MetroPCS receipt dated October 11, 2018 |
| 17. | | | San Diego Metropolitan Transit System Customer Service Form completed by Plaintiff on October 12, 2018 |
| 18. | | | San Diego Metropolitan Transit System Public Records Act Request Form completed by Plaintiff |
| 19. | | | Letter written by Damontae Hill to the Office of General Counsel for San Diego Metropolitan Transit System regarding a civil rights complaint, wherein Officer Torres assaulted and slammed Mr. Hill to the ground at the Linda Vista trolley station on October 30, 2019 |



| | | | |
|---|---|---|---|
| 20. | | | Defendant San Diego Metropolitan System's Responses to Requests for Admissions, Set One, Propounded by Plaintiff |
| 21. | | | Defendant San Diego Metropolitan Transit System's Responses to Interrogatories, Set One, Propounded by Plaintiff |
| 22. | | | Code Compliance Inspector, Training Manual |
| 23. | | | Transit Enforcement Personnel File re: CCI Javier Torres |
| 24. | | | Transit Enforcement Training File re: CCI Javier Torres |
| 25. | | | Rural Metro No. 7 Paramedic/EMT records (dated 10/11/2018) |
| 26. | | | MTS: Code Compliance Inspector Job Description |
| 27. | | | California Commission Peace Officer Standards & Training (POST) Certified PC 832 and Student Workbook (revised Sept. 2019) |
| 28. | | | Body CAM Videos No. 3 re: TSS Clinton Cardinez |

Dated: December 29, 2022          **PLC LAW GROUP, APC**


*/s/Peter L. Carr, IV*
_____
Peter L. Carr, IV
Attorneys for Plaintiff D.T., a minor by and
through his guardian Tanika Tyler



PLAINTIFF'S MEMORANDUM OF CONTENTION OF FACT AND LAW