PETER L. CARR, IV (SBN 256104)
PCARR@THEPLCLAWGROUP.COM
NA'SHAUN L. NEAL (SBN 284280)
NNEAL@THEPLCLAWGROUP.COM
LAUREN K. MCRAE (SBN 331296)
LMCRAE@THEPLCLAWGROUP.COM
PLC LAW GROUP, APC
3756 SANTA ROSALIA DR., SUITE 326
LOS ANGELES, CA 90008
TELEPHONE: (310) 400-5890
FACSIMILE:  (310) 400-5895
ATTORNEYS FOR PLAINTIFF,
**D.T., A MINOR, BY AND THROUGH HIS**
**GUARDIAN AD LITEM, TANKIA TYLER**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| D.T., a minor, by and through his Guardian Ad Litem, Tanika Tyler,<br><br>          Plaintiff,<br>     vs.<br><br>San Diego Metropolitan Transit System; City of San Diego, Javier Torres; and DOES 1 through 10 inclusive,<br><br>          Defendants. | Case No.: 3:19-cv-00901-RBM-KSC<br><br>**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES RE: PRE-TRIAL ISSUES** |



## I. Introduction

Below Plaintiff will brief the following issues as directed by the Court:

a) Whether the Court or the jury decides the issue of whether a reasonable officer would believe reasonable suspicion or probable cause existed to detain or arrest D.T.;

b) Whether a reasonable officer would have believed reasonable suspicion or probable cause existed to detain or arrest D.T.; and

c) Whether D.T. telling Officer Torres not to touch him was constitutionally protected speech.

## II. Factual Background

At the time of the subject incident which occurred on October 11, 2018 at approximately 2:00 p.m, D.T. was waiting at the City College Trolley Station for a group of friends (George, Ash, Checco and David), as they had plans to meet up at the station and go to Memorial Park. Declaration of Peter L. Carr, IV ("Carr Decl."), ¶ 2.

As D.T. was talking with a group of friends, he was approached by Officers Javier Torres and Clifton Cardinez. The interaction was captured on Officer Torres' body worn camera. Carr Decl., ¶ 4. The timestamp at the start of the video is 14:59:08. *Id.* At 15:00:01, Officer Torres says to a crowd of students, "You guys have to keep going…let's go guys, let's go, you guys are loitering you're missing buses and trolleys, you can't do that." *Id.* Then at 15:00:12, while standing behind D.T., Officer Torres says "Let's go across the street please." *Id.* Next, Officer Torres says, "Sir, you been here for a while. Let's go," as he pushes D.T. forward. *Id.* In response, D.T. says to Officer Torres, "Please don't touch me, sir." *Id.* Officer Torres replies to D.T., "Okay. Let's go, sir. Let's go. Walk." *Id.* At approximately 15:00:18, Officer Torres asks D.T., "Are you going to walk, sir," and D.T. replies, "Yeah." *Id.* Officer Torres responds, "Okay." *Id.*

Then at 15:00:21, as D.T. takes a step forward, Officer Torres tells D.T. to put

his hands behind his back while grabbing D.T.'s arms. *Id.* Then Officer Torres tackles D.T. to the ground. *Id.* From 15:00:23 to 15:00:35, as Officer Torres tackles D.T, the video is completely or partially obstructed. *Id.* As Officer Torres tackles D.T., Officer Torres tells D.T., "I'm going to tase you," twice and repeatedly tells D.T. to put his hands behind back. *Id.* At 15:00:31, D.T. is pushed and pulled to the ground. *Id.* At 15:00:34 it appears Officer Torres knocks his body camera off and onto the ground. *Id.* At 15:00:35, Officer Cardinez stands over D.T. and Officer Torres; Officer Cardinez looks down at them, as D.T. is on the ground with his neck positioned over the metal transit railing with his hands behind his back. *Id.* Officer Torres applies pressure to D.T.'s body and neck and handcuffs him. *Id.* Meanwhile, bystanders are yelling at the officers to let D.T. go. *Id.* At 15:00:59, Officer Torres stands D.T. up. *Id.* Officer Torres then walks D.T. to an area to sit down and cites him for loitering (Cal. Public Utilities Code § 120451), failure to comply (San Diego Metropolitan Transit System Codified Ordinance 13.5L) and skateboarding in a transit facility (Cal. Penal Code 640(b)(5)). *Id.*

The above-described use of force was also captured on Officer Cardinez' body-worn camera. *Id.* at ¶ 5. The timestamp at the start of the video is 13:50:58. *Id.* At approximately 14:00:30, Officer Torres takes D.T. to the ground. *Id.* At 14:00:50, D.T. is on the ground with his neck positioned over the metal transit railing with his hands behind his back. *Id.*

### III.   The Court Decides Whether A Reasonable Officer Would Have Believed Reasonable Suspicion or Probable Cause Existed To Justify A Detention Or Arrest, When The Material Facts Giving Rise To The Detention Or Arrest Are Undisputed

Courts measure probable cause by an objective standard. *People v. Limon*, 17 Cal.App.4th 524, 539 (1993). As a result, "the question of whether a reasonable officer could have believed probable cause (or reasonable suspicion) existed to justify a search or an arrest is 'an essentially legal question,' that should be



determined by the district court at the earliest possible point in the litigation." *Act Up!/Portland v. Bagley*, 988 F.2d 868, 873 (9th Cir. 1993) (internal citations omitted). Though it is generally left to the Court to determine whether probable cause exists, it cannot do so if there are genuine issues of material fact related to the existence of probable cause. *Sierra Club Found. v. Graham*, 72 Cal. App.4th 1135 (1999). When "the facts that gave rise to the arrest are controverted, the trial court must instruct the jury as to what facts, if established, would constitute probable cause". *Levin v. United Air Lines, Inc.*, 158 Cal. App. 4th 1002, 1018 (2008).

**IV.   Since It Is Undisputed That D.T. Was At The Train Station For A Lawful Purpose, The Court Must Find As A Matter of Law No Reasonable Officer Would Have Believed Reasonable Suspicion or Probable Cause Existed To Detain or Arrest D.T. For Loitering**

D.T. was arrested for violating Cal. Public Utilities Code § 120451, which prohibits "loitering in or about, transit facilities". While Cal. Public Utilities Code § 120451 does not specifically define "loitering", longstanding California case law has clearly defined "loitering" in the criminal context. More than half a century ago in *In re Cregler* (1961) 56 Cal.2d 308, the Supreme Court upheld the constitutionality of former Penal Code section 647, subdivision 4, which made it a misdemeanor for any person known to be a pickpocket, thief or burglar to loiter around certain specified public places, including railroad depots. The petitioner argued the statute was unconstitutionally vague because it did not define the term "loiter". The Court rejected said argument, explaining the word "loiter" in the criminal context "has a sinister or wrongful as well as a reasonable definite implication…the word 'loiter' obviously connotes lingering in the designated places for the purpose of committing a crime as opportunity may be discovered." *Id.* at p. 312; see also *People v. Teresinski* (1982) 30 Cal.3d 822, 830; *In re Hoffman* (1967) 67 Cal.2d 845, 853. The Court further held, "[m]anifestly one

who goes to a bus station or railroad depot and waits for the purpose of buying a ticket, boarding the conveyance, meeting a relative or friend actually expected to arrive, or with any other legitimate objective, is not loitering within the sense of the statute. Loitering as forbidden includes waiting, but mere waiting for any lawful purpose does not constitute such loitering." *Cregler*, 56 Cal.2d at p. 312.

Here, the relevant facts that gave rise to D.T.'s arrest are uncontroverted. It is undisputed that D.T. was waiting at the City College Trolley Station for a lawful purpose (i.e. waiting for friends actually expected to arrive). During D.T.'s deposition, he testified that he arrived at the trolley station by way of a trolley and was waiting for a group of friends (George, Ash, Checco and David), as they had plans to meet up at the station and go to Memorial Park on the date of the subject incident. See Carr Decl., ¶ 2. Accordingly, the Court must find *as a matter of law* that a reasonable officer would not have believed that reasonable suspicion or probable cause existed to detain or arrest D.T. for loitering under Cal. Public Utilities Code § 12045.

Defendants have no evidence to dispute Plaintiff's contention that he was waiting at the station for a lawful purpose. In anticipation of Defendants' meritless argument that D.T. was waiting at the station for the purpose of selling marijuana, Plaintiff directs the Court's attention to Officer Torres' own deposition testimony. Officer Torres testified that he never approached D.T. about selling marijuana and "didn't have any concrete evidence" that D.T. was selling marijuana. Carr Decl. ¶ 3. Officer Torres testified that he never observed D.T. make any hand-to-hand transactions; he "assumed" D.T. was selling marijuana because he observed D.T. "[t]alking to different groups, approach them and backpack in the front, kids obviously blocking him." *Id.* Admittedly by Defendant Torres, said conduct does not constitute reasonable suspicion or probable cause to believe D.T. had engaged in any drug transactions. Defendant Torres never observed D.T. exchange anything or make any unusual hand gestures that would be indicative or

suggestive of a hand-to-hand drug transaction or any other illegal activity. See *United States v. Kitchen*, 11 F. App'x 844, 845 (9th Cir. 2001) (Police, who saw defendant make hand-to-hand contact with man in a high crime area but did not see the men exchange anything, lacked reasonable suspicion for Terry stop. Defendant's subsequent flight did not give them probable cause to arrest him.); *United States v. Gee*, No. 2:19-cr-0200-RFB-VCF, 2020 U.S. Dist. LEXIS 26592, at *6 (D. Nev. Feb. 17, 2020) ("The Court finds that the officers did not in fact see Gee or his companions engage in hand movements or any conduct which indicates that a hand-to hand drug transaction occurred. The Court finds that the government has not credibly established that the officers observed any unusual hand gestures that would be indicative of or suggestive of a hand-to-hand drug transaction or any other illegal activity. This alleged conduct can therefore not serve as a basis for reasonable suspicion."). Therefore, as a matter of law, no reasonable officer would have believed reasonable suspicion existed to believe D.T. was at the trolley station to sell marijuana.

In short, since it is **undisputed** that D.T. was waiting at the City College Trolley Station for his friends whom he planned to meet—not for the purpose of committing any crime—D.T. was not "loitering" under Cal. Public Utilities Code § 12045. Hence, the Court must find *as a matter of law* that a reasonable officer would <u>not</u> have believed reasonable suspicion or probable cause existed to detain or arrest D.T. for loitering, and should thereby instruct the jury that no reasonable suspicion or probable cause existed to arrest D.T. for loitering.

///
///
///
///
///
///



1
2
3
4
5
6

**V.    Since There Was No Reasonable Suspicion Or Probable Cause To Believe D.T. Was Involved In Criminal Activity, D.T. Was Free To Refuse To Comply With Officer Torres' Order To Leave The Public Trolley Station, And Thus No Reasonable Officer Would Have Believed Probable Cause Existed To Arrest D.T. For Failure To Comply**

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

An individual has a liberty interest protected by the Fourteenth Amendment "to remain in a public place of his choice." See *City of Chicago v. Morales*, 527 U.S. 41, 54 (1999). Hence, D.T. possessed a clearly-established Fourteenth Amendment right to remain at the trolley station, given it was a public place and he was not "loitering" (as explained above, D.T. was at the station for a lawful purpose—waiting on his friends whom he actually expected to arrive—and Officer Torres lacked reasonable suspicion or probable cause to believe D.T. was involved in any criminal activity). The United States Supreme Court has ruled that an individual has a right to ignore a peace officer who approaches that individual without reasonable suspicion or probable cause. See *Illinois v. Wardlow*, 528 U.S. 119, 125 (2000). The approached individual may refuse to cooperate; a refusal to cooperate, without more, does not furnish the minimal level of objective justification needed for detention or seizure. *Id*. Accordingly, D.T. had the right to refuse to comply with Officer Torres' order to leave the station for loitering; doing so did not create no probable cause to arrest D.T. for failure to comply. Based on the foregoing undisputed facts, this Court must find as a matter of law that no reasonable officer would have believed probable cause existed to arrest D.T. for failure to comply under San Diego Metropolitan Transit System Codified Ordinance 13.5L[1]. Thus, the Court should instruct the jury that no probable cause existed to arrest D.T. for failure to comply.

---

[1] San Diego Metropolitan Transit System Codified Ordinance 13.5L provides no person shall fail or refuse to comply with any lawful order or direction of any MTS inspector, security officer, whether an employee or designated agent of MTS, or any peace officer.



**VI. Since The Parties Dispute Whether D.T. Was Skateboarding In The Station, The Court Must Instruct The Jury That Probable Cause To Arrest D.T. For Cal. Penal Code 640(b)(5) Exists Should It Make The Factual Determination That D.T. Was Skateboarding In The Station**

Under state law, Cal. Penal Code 640(b)(5), it is an infraction to skateboard, roller skate, bicycle ride, roller blade, or operate a motorized scooter or similar device in a public transportation system facility, vehicle, or parking structure. Whether D.T. was skateboarding in the station is a disputed factual contention. Viewing the disputed facts in the light most favorable to Plaintiff, there was no probable cause to arrest D.T. for Cal. Penal Code 640(b)(5).

According to Officer Torres, D.T. was skateboarding in the City College Trolley Station ("station"). According to Plaintiff, he was not skateboarding inside the station.  Declaration of D.T., ¶ 2. While Plaintiff testified that he did not remember whether he was skateboarding inside the station during his deposition, D.T. has explained that at the time of his deposition, he was unclear as to what area was considered the station. *Id.* at ¶ 3. Upon reviewing a photograph demarcating what area is considered the station, D.T. declared that he was not skateboarding in that area.  *Id.* at ¶ 4. "Newly-remembered facts, or new facts, accompanied by a reasonable explanation, should not ordinarily lead to the striking of a declaration as a sham." *Yeager v. Bowlin*, 693 F.3d 1076, 1081 (9th Cir. 2012); *See Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806-07 (1999) (stating the general rule that parties may explain or attempt to resolve contradictions with an explanation that is sufficiently reasonable).

Since disputed material facts exist, the Court must instruct the jury that probable cause to arrest D.T. for Cal. Penal Code 640(b)(5) existed if it makes a factual determination that D.T. was skateboarding in the station.

///



**VII.   D.T. Telling Officer Torres Not To Touch Him Was Constitutionally Protected Speech**

"The Supreme Court has consistently held that the First Amendment protects verbal criticism, challenges, and profanity directed at police officers unless the speech is 'shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest.'" *United States v. Poocha*, 259 F.3d 1077, 1080 (9th Cir. 2001) (quoting *City of Houston v. Hill*, 482 U.S. 451, 461, (1987)); *see also Velazquez v. City of Long Beach*, 793 F.3d 1010, 1020 (9th Cir. 2015) ("an 'expression of disapproval toward a police officer . . . f[alls] squarely within the protective umbrella of the First Amendment ...'"); *Mackinney v. Nielsen*, 69 F.3d 1002, 1007 (9th Cir. 1995) ("Even when crass and inarticulate, verbal challenges to the police are protected."); *Duran v. City of Douglas, Ariz.*, 904 F.2d 1372, 1378 (9th Cir. 1990) ("The freedom of individuals to oppose or challenge police action verbally without thereby risking arrest is one important characteristic by which we distinguish ourselves from a police state."). For example, in *Poocha,* after a park ranger ordered Poocha to disperse from a crowd, Poocha clenched his fists and said to the ranger, "fuck you," and "that's fucked." *Poocha,* 259 F.3d at 1079. The court held that Poocha's speech was protected because it wasn't likely to incite violence, even though Poocha's words were derogatory to the police and accompanied by physical gestures. *Id.* at 1082.

Based on the foregoing, it is clear D.T. had a First Amendment right to verbally challenge Officer Torres' conduct by stating, "Don't touch me." D.T.'s speech in no way incited violence or could be reasonably viewed as "fighting words". Accordingly, D.T.'s speech is constitutionally protected.

///

///

///



## VIII.  Conclusion

In sum, the Court makes a determination as to whether a reasonable officer would believe reasonable suspicion or probable cause existed to detain or arrest when the underlying facts are undisputed; when the facts are disputed, the Court must instruct the jury as to what facts, if established, would constitute probable Cause. As explained above, it is undisputed that D.T. was at the station for a lawful purpose. Accordingly, a reasonable officer would not have believed reasonable suspicion or probable cause existed to detain or arrest D.T. for loitering or failure to comply with the order to leave the public station. Therefore, the Court must instruct the jury that no reasonable suspicion or probable cause existed to detain or arrest D.T. for loitering or failure to comply. On the other hand, it is disputed as to whether Plaintiff was skateboarding in the station, which is the purported basis for D.T.'s alleged violation of Cal. Penal Code 640(b)(5). Accordingly, the Court must instruct the jury that probable cause to arrest D.T. for violating Cal. Penal Code 640(b)(5) existed only if it makes the factual finding that D.T. was skateboarding in the station. Lastly, D.T.'s speech telling Officer Torres not to touch him was constitutionally protected activity for the reasons explained herein.

Dated: April 7, 2023           **PLC LAW GROUP, APC**

*/s/Peter L. Carr IV*

_____

Peter L. Carr, IV
Na'Shaun L. Neal
Lauren K. McRae
Attorneys for Plaintiff D.T., a minor by and through his guardian Tanika Tyler

