**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| D.T., a minor, by and through his Guardian Ad Litem, Tanika Tyler, | Case No.: 3:19-cv-00901-RBM-KSC |
| Plaintiff, <br> vs. | **JOINT PRETRIAL ORDER** |
| San Diego Metropolitan Transit System; City of San Diego, Javier Torres; and DOES 1 through 10 inclusive, | |
| Defendants. | |

## 1.   STATEMENT OF THE CASE, CLAIMS AND DEFENSES

This civil rights lawsuit was filed by Plaintiff Dae'Quon Tyler (D.T.), a minor by and through his guardian and mother, Tanika Tyler against the San Diego Metropolitan Transit System (SDMTS) and Code Compliance Inspector Javier Torres (Torres). D.T. contends that he suffered damages as a result of his detention and arrest by Inspector Torres at the City College Trolley Station ("Station") on October 11, 2018. D.T. alleges causes of action for (1) Excessive Force (42 U.S.C. § 1983); (2) Unlawful Detention (42 U.S.C. § 1983); (3) Equal Protection (42 U.S.C. § 1983); (4) Negligence (Cal. Gov. Code, §§ 815.2(a), 820(a)); (5) Battery; (6) Violation of Unruh Act (Cal. Civ. Code, § 51); and (7) Violation of Bane Act (Cal. Civ. Code § 52, 52.1).

1

D.T. contends that Inspector Torres was negligent, utilized excessive force and committed battery when he determined that D.T. was loitering and pushed him while ordering him to leave the trolley station.  When D.T. verbally requested that Inspector Torres not touch him, Plaintiff D.T contends that Inspector Torres retaliated against his right to free speech, utilized excessive force and committed battery when he forcibly detained D.T. by grabbing and tackling him to the ground and handcuffing him. Additionally, D.T. contends that Inspector Torres discriminated against him because a similarly situated Latino young male was treated differently when he was detained and arrested by Inspector Torres and that similarly situated Latino and Caucasian youth were not detained nor arrested. As a result of the actions of Defendants, D.T. has suffered acute physical injuries to his person and extreme emotional distress that persists up to the present time.

Defendants deny liability and contend that Inspector Torres was a uniformed public officer acting within the course and scope of his employment by SDMTS as part of a uniformed detail at the City College Station. Inspector Torres contacted D.T. on 4-5 occasions over a 40-minute period and instructed him he was loitering and to leave the station.  D.T. was non-compliant, belligerent and aggressive thereby forcing Inspector Torres to use reasonable force to issue a citation to D.T. for violation of Public Utilities Code § 120451 – *loitering in transit facility*; Penal Code § 640(b)(5) – *skateboarding in transit facility*; and MTDB Ordinance 13.5L – *failure to comply with lawful order*. The entire contact is documented by station surveillance video and body cam (BCR) video from Inspector Torres.

## 2. CAUSES OF ACTIONS

**Claims 1-6:** Plaintiff D.T. contends Defendant Inspector Torres violated Plaintiffs' constitutional rights under the United States Constitution under 42 U.S.C. § 1983 and 42 U.S.C. § 2000(d).

**Elements:** 42 U.S.C. § 1983 provides that any person or persons, who under color of state law, deprives another of any rights, privileges or immunities secured

2

by the Constitution or laws of the United States shall be liable to the injured party. *See* Ninth Circuit Model Jury Instruction § 9.1 (2017). Section 1983 "is not a source of substantive rights, but merely provides a method for vindicating federal rights conferred elsewhere." *Graham v. Connor*, 490 U.S. 386, 393-94 (1989).

The elements of a Title VI intent claim derive from and are similar to the analysis of cases decided under the Fourteenth Amendment's Equal Protection Clause and Title VII of the Civil Rights Act of 1964, as amended. Because the Title VI statutory prohibition on discrimination is based on the Equal Protection Clause, the constitutional analysis of intentional discrimination should be applied under Title VI. *See Grutter v. Bollinger*, 539 U.S. 306, 343–44 (2003) (citing *Regents of Univ. of Cal. v. Bakke*, 438 U.S. 265, 287 (1978) (opinion of Powell, J.) ("Title VI . . . proscribe[s] only those racial classifications that would violate the Equal Protection Clause or the Fifth Amendment.").

The elements of Plaintiff's § 1983 and § 2000d claims against the Inspector Torres and SDMTS are addressed below.

## A.   <u>First Amendment Violation (Claim 5)</u>:

Under the First Amendment, a person has the right to be free from retaliation for engaging in free speech. In order to prove Defendants SDMTS and Inspector Torres deprived the Plaintiff D.T. of his First Amendment rights, the plaintiff must prove the following additional evidence by a preponderance of the evidence:

1.    Plaintiff D.T. was engaged in a constitutionally protected activity;

2.    Defendant Inspector Torres' actions against Plaintiff D.T. would chill a person of ordinary firmness from continuing to engage in the protected activity; and

3.    Plaintiff D.T.'s protected activity was a substantial or motivating factor in the defendant's conduct.

*See* Ninth Circuit Model Jury Instruction § 9.11.

/ / /

3

1    Inspector Torres did not have the legal authority to order Plaintiff to leave
2    the station.  In his deposition, Inspector Torres testified that he made physical
3    contact with D.T. because he suspected him of loitering pursuant to Public Utilities
4    Code ("PUC") 120451 and to order him to leave the premises. ~~Plaintiff's police~~
5    ~~practices expert, Roger Clark, has opined officers are trained to refer to the penal~~
6    ~~code for guidance when enforcing municipal codes.  The California Penal Code~~
7    ~~only makes it a crime to loiter in public spaces if there is an intent to commit~~
8    ~~prostitution.  California *Penal Code* section 653.22.  California *Penal Code* section~~
9    ~~653.20(e) defines loitering as "delay[ing] or linger[ing] without a lawful purpose~~
10   ~~for being on the property and for the purpose of committing a crime as opportunity~~
11   ~~may be discovered.~~  D.T. was at the station for lawful purposes. He had a valid
12   metro pass card and was waiting for some friends to arrive. Accordingly, Inspector
13   Torres' order for D.T. to leave the station was without legal authority and had no
14   legal authority to make physical contact with D.T.  Inspector Torres' detainment
15   and arrest because D.T. told him not to touch him violates his First Amendment
16   right.

17        <u>Damages</u>:

18        D.T. seeks compensatory damages predicated on physical injuries to his
19   person and extreme emotional distress that persists up to the present time and
20   attorney's fees pursuant to 42 U.S.C. § 1988.

21        <u>Defenses</u>.

22        Defendants deny that Plaintiff D.T. was engaged in a constitutionally
23   protected activity and/or that Inspector Torres' actions prohibited Plaintiff from
24   engaging in that activity. Public Utilities Code section 120451 prohibits a person
25   from loitering in or about a transit center/rail station. Penal Code section 640(b)(5)
26   prohibits skateboarding in a transit facility. MTDB Ordinance 13.5L establishes a
27   criminal offense based on a failure to comply with a lawful order. Plaintiff D.T.
28   was loitering and skateboarding in the City College Trolley Station and admittedly

4

declined to board a train or leave the station when instructed on multiple occasions over a 40-minute period to do so by a uniformed public officer. Inspector Torres is a public officer with full arrest authority for infractions/misdemeanors occurring on transit property in his presence. (MTDB Codified Ordinance No. 5 , Section 5.3(A).) Inspector Torres acted within the authority granted to him under California law and lawfully detained/arrested Plaintiff D.T. for the aforementioned three violations.

**B.    Fourth Amendment Violation – Unreasonable Seizure (Claim 2):**

Under the Fourth Amendment, a person has the right to be free from an unreasonable seizure of his person. In order to prove that Defendants SDMTS and Inspector Torres deprived Plaintiff D.T. of this Fourth Amendment right, the plaintiff must prove the following additional elements by a preponderance of the evidence:

1.    Defendant Inspector Torres seized the Plaintiff D.T.'s person;

2.    In seizing Plaintiff D.T.'s person, Defendant Inspector Torres acted intentionally; and

3.    The seizure was unreasonable.

*See* Ninth Circuit Model Jury Instruction § 9.20.

Inspector Torres did not have the legal authority to order Plaintiff to leave the station.  In his deposition, Inspector Torres testified that he approached plaintiff because he suspected him of loitering pursuant to Public Utilities Code ("PUC") 120451. ~~Plaintiff's police practices expert, Roger Clark, has opined officers are trained to refer to the penal code for guidance when enforcing municipal codes. The California Penal Code only makes it a crime to loiter in public spaces if there is an intent to commit prostitution.  California Penal Code section 653.22. California Penal Code section 653.20(c) defines loitering as "delay[ing] or linger[ing] without a lawful purpose for being on the property and for the purpose of committing a crime as opportunity may be discovered.~~ D.T. was at the station

for lawful purposes. He had a valid metro pass card and was waiting for some friends to arrive. Accordingly, Inspector Torres' order for D.T. to leave the station was without legal authority and his detainment and arrest because he did not immediately follow those orders was in violation of his Fourth Amendment right.

Damages:

D.T. seeks compensatory damages based on the physical injuries to his person and extreme emotional distress that persists up to the present time, punitive damages against Defendant Inspector Torres and attorney's fees pursuant to 42 U.S.C. § 1988.

Defenses:

CCI Torres was a uniformed public officer with full arrest authority for infractions/misdemeanors occurring in his presence on transit property. (MTDB Codified Ordinance No. 5, section 5.3(A).) Public officers may detain a suspect based on "reasonable suspicion that criminal activity has taken place, is taking place, or is about to take place, and that person detained is connected to that activity." (PC 832; CS Vol. II.) Public Utilities Code § 120451 expressly prohibits "...*loitering in or about, transit facilities [ ] including ... transit centers, rail stations, bus shelters and bus stops on public and private property*." Penal Code § 640(b)(5) prohibits skateboarding in a transit facility. MTDB Ordinance 13.5L establishes a criminal offense based on a failure to comply with a lawful order.

The undisputed facts establishing reasonable suspicion are: (1) Torres observed D.T. loitering/skateboarding in the City College Station for 40 minutes; (2) D.T. failed to board four trains in both directions; (3) Torres instructed D.T. 4-5 times that he was loitering and would need to board a train or leave the station; (4) D.T. admits he knew he was not permitted to loiter in the station; (5) D.T. admits there was nothing unclear about Torres' instructions to leave the station; and (6) D.T. admits Torres instructed him on multiple occasions to board a train or leave

the station and he did not comply. Based on the foregoing, Torres had *reasonable suspicion* to detain D.T.

### C. Fourth Amendment Violation – Excessive Force (Claim 1):

Under The Fourth Amendment, a police officer may use only such force as is "objectively reasonable" under all of the circumstances. You must judge the reasonableness of a particular use of force from the perspective of a reasonable officer on the scene and not with the 20/20 vision of hindsight. Although the facts known to the officer are relevant to your inquiry, an officer's subjective intent or motive is not relevant to your inquiry.

In determining whether the officer used excessive force in this case, consider all of the circumstances known to the officer on the scene, including:

1. Whether Plaintiff D.T. had committed a crime;

2. Whether there was probable cause for a reasonable officer to believe that Plaintiff D.T. had committed a crime;

3. The nature of the crime or other circumstances known to Inspector Torres at the time force was applied;

4. Whether Plaintiff D.T. posed an immediate threat to the safety of Inspector Torres or to others;

5. Whether Plaintiff D.T. was actively resisting arrest or attempting to evade arrest by flight;

6. The amount of time Officer Torres had to determine the type and amount of force that reasonably appeared necessary, and any changing circumstances during that period;

7. The type and amount of force used; and

8. Whether a reasonable officer would have or should have accurately perceived a mistaken fact.

*See* Ninth Circuit Model Jury Instruction § 9.25.

1    Inspector Torres did not have the legal authority to make physical contact

2    with D.T. nor detain nor arrest D.T.  In his deposition, Inspector Torres testified

3    that he approached plaintiff because he suspected him of loitering pursuant to

4    Public Utilities Code ("PUC") 120451. ~~Plaintiff's police practices expert, Roger~~

5    ~~Clark, has opined officers are trained to refer to the penal code for guidance when~~

6    ~~enforcing municipal codes.  The California Penal Code only makes it a crime to~~

7    ~~loiter in public spaces if there is an intent to commit prostitution.  California Penal~~

8    ~~Code section 653.22.  California Penal Code section 653.20(c) defines loitering as~~

9    ~~"delay[ing] or linger[ing] without a lawful purpose for being on the property and~~

10   ~~for the purpose of committing a crime as opportunity may be discovered~~.  D.T. was

11   at the station for lawful purposes. He had a valid metro pass card and was waiting

12   for some friends to arrive. Accordingly, Inspector Torres' order for D.T. to leave

13   the station was without legal authority and any force used to detain or arrest D.T.

14   was excessive because D.T. had not committed a crime nor was D.T. engaged in

15   the commission of a crime.

16   <u>Damages:</u>

17   D.T. seeks compensatory damages based on the physical injuries to his

18   person and extreme emotional distress that persists up to the present time, punitive

19   damages against Defendant Inspector Torres and attorney's fees pursuant to 42

20   U.S.C. § 1988.

21   <u>Defenses:</u>

22   Penal Code § 835a authorizes a public officer to use "reasonable force to

23   effect the arrest, to prevent escape or to overcome resistance … [a] [public] officer

24   who makes or attempts to make an arrest need not retreat or desist from his efforts

25   by reason of the resistance or threatened resistance of the person being arrested."[1]

26   _____

27   [1] Whether the force utilized to effectuate an arrest is reasonable is a separate issue
from whether the arrest was unlawful. Plaintiff's contention that assuming

28   arguendo the arrest is "*unlawful*" any force utilized to effectuate the arrest is
unreasonable/excessive, conflicts with existing law. Accordingly, "[t]he excessive

8

1    Where a person knows he or she is being arrested, it is the duty of that person to

2    refrain from using force to resist the arrest, regardless of whether the arrest or

3    detention is not lawful. (Pen. Code, § 834a; *see also People v. Curtis* [1969] 70

4    Cal.2d 347, 351-357.) If a detainee deems the arrest to be unlawful, he is required

5    to submit peacefully to the arrest and pursue available remedies through the

6    judicial process. *People v. Curtis, supra*, 70 Cal.2d at 353.

7        D.T. engaged in both *passive* and *active* resistance to the arrest by (1)

8    ignoring verbal commands to put his hands behind his back; (2) locking his arms to

9    resist being handcuffed; (3) pulling away; (4) wrapping his foot around Torres'

10   foot to gain control/leverage; and (5) use of body strength to resist handcuffing.

11   Torres adhered to POST guidelines/training and MTS Security SOP 200.20 in

12   responding to D.T.'s *passive/active* resistance by using officer's strength, control

13   holds/techniques and takedown to gain control. The force utilized was reasonable

14   and complied with the POST standards/training. D.T. was brought to his feet

15   within 23 seconds and escorted to a bench and ultimately a mobile unit. Torres did

16   ***not*** administer any punches, slaps, kicks, choke holds, chemical spray, Taser,

17   _____

18   force and false arrest factual inquiries are distinct." *Velazquez v. City of Long
     Beach*, 793 F. 3d 1010, 1024 (9th Cir. 2015). Therefore, merely establishing an

19   unlawful arrest "does ***not*** establish an excessive force claim; and vice-versa." *Id*.
     Every federal appellate court that has considered the argument has rejected it. (*See*

20   *Snell v. City of York*, 564 F. 3d 659, 672 [3d Cir. 2009] [rejecting an "effort [ ] to
     bootstrap excessive force claims and probable cause challenges"; the contention

21   "that the force applied was excessive solely because probable cause was lacking

22   for [plaintiff's] arrest."]; *Freeman v. Gore*, 483 F. 3d 404, 417 [5th Cir. 2007]
     ["That the deputies' arrest of [plaintiff] was unlawful on the facts alleged does not,

23   however, mean that any force used by the deputies to effectuate the arrest was

24   necessarily excessive [ ] Rather, [plaintiff's] excessive force claim is separate and
     distinct from her unlawful arrest claim, and we must therefore analyze the

25   excessive force claim without regard to whether the arrest itself was justified"];

26   *Bashir v. Rockdale County*, 445 F. 3d 1323, 1332 [11th Cir. 2006] ["When
     properly stated, an excessive force claim presents a discrete constitutional violation

27   relating to the manner in which an arrest was carried out, and is independent of

28   whether law enforcement had the power to arrest"]

9

baton, etc. The *minimal* force utilized was reasonable in all aspects for a non-compliant/resisting suspect.

**D.**   **Fourteenth Amendment Violation – Intentional Discrimination /Disparate Treatment (Claims 3 and 4):**

As to the plaintiff's claim that his race was a motivating factor for the defendant's decision to physically abuse and/or falsely detain him, the plaintiff has the burden of proving both of the following elements by a preponderance of the evidence:

1.   the plaintiff was physically abused and/or falsely detained by the defendant; and

2.   the plaintiff's race was a motivating factor in the defendant's decision to physically abuse and/or falsely detain the plaintiff.

*See* Ninth Circuit Model Jury Instruction § 10.3.

Inspector Torres did not have the legal authority to order D.T. to leave the station or to detain and arrest him.  D.T. was physically touched by Inspector Torres and ordered to leave the metro station when he was lawfully on the premises. He further was detained and arrested when he did not comply. The incident was caught on Inspector Torres' body camera. Of the youth who were on body camera footage, D.T. is the only African-American and the other youth are Caucasian and Latino. Similarly situated Latino and Caucasian youth were asked to leave but not detained nor arrested.  And when a Latino young male was detained and arrested, he was not thrown to the ground nor forced to sit on the ground after being handcuffed.

Damages:

D.T. seeks compensatory damages based on the physical injuries to his person and extreme emotional distress that persists up to the present time and attorney's fees pursuant to 42 U.S.C. § 1988.

/ / /

10

3:19-cv-00901-RBM-KSC

**Defenses**:

Title VI prohibits discrimination and/or adverse treatment "on the ground of race, color, or national origin." There is no evidence of such discrimination by San Diego Metropolitan Transit System and/or Inspector Torres in the instant matter. The City College Station is accessible to the entire public regardless of race, color, or national origin. Further, Public Utilities Code § 120451 – *loitering in transit facility*; Penal Code § 640(g)(5) – *skateboarding in transit facility*; and MTDB Ordinance 13.5L – *failure to comply with lawful order*; are equally enforced against all persons regardless of race, color, or, national origin. Inspector Torres' instructions to not loiter and depart the City College Station were directed to all persons and not just D.T.  Unfortunately, D.T. was the only person who did not comply with the instruction and physically resisted inspector Torres' efforts to detain and issue a citation.  D.T. concedes the actions/events were unrelated to "race, color or national origin."

> Q.  *Was there anything that happened here that you believed to be racially motivated?*
>
> A.  *No.*
>
> Q.  *So other than your belief that he called you the N-word, there is nothing else racial about this whole contact. Would you agree with that?*
>
> A.  *Yeah.*
>
> (D.T. Depo., at pp. 124:20-125:1.)

**E.    Bane Act (California Civ. Code § 52.1)(Claim 10):**

Plaintiff D.T. claims that Inspector Torres intentionally interfered with his civil rights by threats, intimidation, or coercion. To establish this claim, Plaintiff D.T. must prove all of the following:

1.    Defendant Inspector Torres acted violently against Plaintiff D.T.'s lawful right to use the public metro station and retaliated against D.T.

11

for having exercised his First Amendment right to protest the
excessive force being subjected to him;

2.   That Defendant Inspector Torres intended to deprive Plaintiff D.T. of
his enjoyment of the interests protected by the First Amendment right;

3.   That Plaintiff D.T. was harmed; and

4.   That Defendant Inspector Torres' conduct was a substantial factor in
causing Plaintiff D.T.'s harm.

*See* Judicial Council of California Civil Jury Instructions (2020 edition), No. 3066.

Inspector Torres did not have the legal authority to make physical contact with D.T. nor detain nor arrest D.T.  In his deposition, Inspector Torres testified that he approached plaintiff because he suspected him of loitering pursuant to Public Utilities Code ("PUC") 120451. ~~Plaintiff's police practices expert, Roger Clark, has opined officers are trained to refer to the penal code for guidance when enforcing municipal codes.  The California Penal Code only makes it a crime to loiter in public spaces if there is an intent to commit prostitution.  California Penal Code section 653.22.  California Penal Code section 653.20(c) defines loitering as "delay[ing] or linger[ing] without a lawful purpose for being on the property and for the purpose of committing a crime as opportunity may be discovered.~~  D.T. was at the station for lawful purposes. He had a valid metro pass card and was waiting for some friends to arrive. Accordingly, Inspector Torres' order for D.T. to leave the station was without legal authority and any force used to detain or arrest D.T. was excessive because D.T. had not committed a crime nor was D.T. engaged in the commission of a crime.

Damages:

D.T. seeks compensatory damages based on the physical injuries to his person and extreme emotional distress that persists up to the present time, punitive

12

damages against Defendant Inspector Torres and attorney's fees pursuant to California Civil Code § 52.1(h).

Defenses:

The Bane Act is codified in California Civil Code § 52.1, which states in subdivision (b) that "*any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this State, has been interfered with, or attempted to be interfered with [ ] may institute and prosecute in their own name and on their own behalf a civil action for damages ....*" The California legislature enacted Section 52.1 to stem a tide of hate crimes. *Jones v. K-mart Corp.*, 17 Cal. 4th 329, 338 (1998). "The plaintiff must show the defendant interfered with or attempted to interfere with the plaintiff's legal rights by threatening or committing violent acts.'." *Julian v. Mission Community Hospital*, 11 Cal. App. 5th 1268, 1290 (2017). Accordingly, "[t]he Bane Act requires that the challenged conduct be intentional." *Simmons v. Superior Court*, 7 Cal. App. 5th 1113, 1125 (2016).

As discussed *supra*, there is no evidence in the instant matter of any intentional acts of violence or threats of violence by Defendants to interfere with Plaintiff's constitutional rights.  CCI Torres was a uniformed public officer with full arrest authority for infractions/misdemeanors occurring in his presence on transit property. (MTDB Codified Ordinance No. 5, Section 5.3(A).)  Public officers may detain a suspect based on "reasonable suspicion that criminal activity has taken place, is taking place, or is about to take place, and that person detained is connected to that activity." (PC 832 Course; Vol. II.) Penal Code § 835 further authorizes a public officer to use "reasonable force to effect the arrest, to prevent escape or to overcome resistance … [a] [public] officer who makes or attempts to make an arrest need not retreat or desist from his efforts by reason of the resistance or threatened resistance of the person being arrested."  Plaintiff is unable to present any evidence that he was denied any constitutional or legal right and/or that

Defendants engaged in intentional violence/threat of violence to deprive Plaintiff of said rights as mandated by the Bane Act.

**F.**   **Unruh Civil Rights Act (Cal. Civ. Code §§ 51 & 52)(Claim 9):**

Plaintiff D.T. claims that Defendant Inspector Torres denied him full and equal access to the metro station because of his race. To establish this claim, Plaintiff D.T. must prove all of the following:

1. That Defendant Inspector Torres denied equal access to the metro station to Plaintiff D.T.;

2. That a substantial motivating reason for Defendant Inspector Torres' conduct was Plaintiff D.T.'s race;

3. That Plaintiff D.T. was harmed; and

4. That Defendant Inspector Torres' conduct was a substantial factor in causing Plaintiff D.T.'s harm.

*See* Judicial Council of California Civil Jury Instructions (2020 edition), No. 3060.

Inspector Torres did not have the legal authority to make physical contact with D.T. nor detain nor arrest D.T.  D.T. was physically touched by Inspector Torres and ordered to leave the metro station when he was lawfully on the premises. He further was detained and arrested when he did not comply. The incident was caught on Inspector Torres' body camera. Of the youth who were on body camera footage, D.T. is the only African-American and the other youth are Caucasian and Latino. Similarly situated Latino and Caucasian youth were asked to leave but not detained nor arrested.  And when a Latino young male was detained and arrested, he was not thrown to the ground nor forced to sit on the ground after being handcuffed.

/ / /

/ / /

/ / /

**Damages:**

D.T. seeks compensatory damages the physical injuries to his person and extreme emotional distress that persists up to the present time and attorney's fees pursuant to California Civil Code § 52.1(h).

**Defenses:**

The Unruh Act is codified in California Civil Code section 51, and states in subdivision (b) that "*all persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.*" In the instant matter, Plaintiff has the burden of establishing that he was denied full and equal access to the transit station because of his race, sex, color, religion, etc. (CACI No. 3060.) "The language and history of the Unruh Act indicate the legislative objective is to prohibit intentional discrimination in access to public accommodations." *Harris v. Capital Growth Investors XIV*, 52 Cal. 3d 1142, 1149 (1991). A plaintiff must therefore plead and prove a case of intentional discrimination to recover under the Unruh Act. *Id*.

Here, there is no evidence of such discrimination by Defendants MTS and/or Inspector Torres. The City College Station is accessible to the entire public regardless of race, color, or national origin. Further, Public Utilities Code § 120451 – *loitering in transit facility*; Penal Code § 640(g)(5) – *skateboarding in transit facility*; and MTDB Ordinance 13.5L – *failure to comply with lawful order*; are equally enforced against all persons regardless of race, color, or national origin. Inspector Torres' instructions to stop skateboarding and to depart the City College Station were directed to all persons in the station and not just D.T. Unfortunately, D.T. was the only person who did not comply with the instruction and physically

15

resisted Inspector Torres' efforts to detain and issue a citation. D.T. likewise concedes the actions/events were unrelated to "race, color or national origin."

> Q.    Was there anything that happened here that you believed to be racially motivated?
> A.    No.
>
> Q.    So other than your belief that he called you the N-word, there is nothing else racial about this whole contact. Would you agree with that?
> A.    Yeah.

(D.T. Depo., at pp. 124:20-125:1.)

## G.    Negligence (Cal. Govt. Code §§ 815.2(a), 820(a))(Claim 7):

Plaintiff D.T. claims that he was negligently harmed by Defendant Inspector Torres. To establish this claim, Plaintiff D.T. must prove all of the following:

1.    That Defendant Inspector Torres was negligent;

2.    That Plaintiff D.T. was harmed; and

3.    That Defendant Inspector Torres' negligence was a substantial factor in causing Plaintiff D.T.'s harm.

See Judicial Council of California Civil Jury Instructions (2020 edition), No. 400.

Inspector Torres did not have the legal authority to make physical contact with D.T. nor detain nor arrest D.T.  In his deposition, Inspector Torres testified that he approached plaintiff because he suspected him of loitering pursuant to Public Utilities Code ("PUC") 120451. ~~Plaintiff's police practices expert, Roger Clark, has opined officers are trained to refer to the penal code for guidance when enforcing municipal codes.  The California Penal Code only makes it a crime to loiter in public spaces if there is an intent to commit prostitution.~~  D.T. was at the station for lawful purposes. He had a valid metro pass card and was waiting for some friends to arrive. Accordingly, Inspector Torres' order for D.T. to leave the station was without legal authority and any force used to detain or arrest D.T. was

16

excessive because D.T. had not committed a crime nor was D.T. engaged in the commission of a crime.

Damages:

D.T. seeks compensatory damages based on the physical injuries to his person and extreme emotional distress that persists up to the present time.

Defenses.

Inspector Torres' actions were consistent with general law enforcement training, practices and procedures in California and were compliant with the general practices, policies and training of SDMTS – Transit Enforcement Department. CCI Torres was a uniformed public officer with full arrest authority for infractions/misdemeanors occurring in his presence on transit property. (MTDB Codified Ordinance No. 5, section 5.3(A).) Public officers may detain a suspect based on "reasonable suspicion that criminal activity has taken place, is taking place, or is about to take place, and that person detained is connected to that activity." (PC 832; CS Vol. II.) Public Utilities Code § 120451 expressly prohibits "…loitering in or about, transit facilities [ ] including … transit centers, rail stations, bus shelters and bus stops on public and private property." Penal Code § 640(b)(5) prohibits skateboarding in a transit facility. MTDB Ordinance 13.5L establishes a criminal offense based on a failure to comply with a lawful order.

The undisputed facts establishing reasonable suspicion are: (1) Torres observed D.T. loitering/skateboarding in the City College Station for 40 minutes; (2) D.T. failed to board four trains in both directions; (3) Torres instructed D.T. 4-5 times that he was loitering and would need to leave the station; (4) D.T. admits he knew he was not permitted to loiter in the station; (5) D.T. admits there was nothing unclear about Torres' instructions to leave the station; and (6) D.T. admits Torres instructed him on multiple occasions to board a train or leave the station and he did not comply. Based on the foregoing, Torres had *reasonable suspicion* to detain and cite D.T.

## H.   Battery by a Peace Officer (Claim 8):

Plaintiff D.T. claims that Defendant Inspector Torres harmed him by using unreasonable force to detain him. To establish this claim, Plaintiff D.T. must prove all of the following:

1.   That Defendant Inspector Torres intentionally touched Plaintiff D.T. or caused Plaintiff D.T. to be touched;

2.   That Defendant Inspector Torres used unreasonable force to detain Plaintiff D.T.;

3.   That Plaintiff D.T. did not consent to the use of that force;

4.   That Plaintiff D.T. was harmed; and

5.   That Defendant Inspector Torres' use of unreasonable force was a substantial factor in causing Plaintiff D.T.'s harm.

A police officer may use reasonable force to detain a person when the officer has reasonable cause to believe that that person has committed a crime.  In deciding whether Defendant Inspector Torres used unreasonable force, you must determine the amount of force that would have appeared reasonable to a police officer in Defendant Inspector Torres' position under the same or similar circumstances. You should consider, among other factors, the following:

1.   The seriousness of the crime at issue;

2.   Whether Plaintiff D.T. reasonably appeared to pose an immediate threat to the safety of Defendant Inspector Torres or others; and

3.   Whether Plaintiff D.T. was actively resisting detention or attempting to evade detention.

*See* Judicial Council of California Civil Jury Instructions (2020 edition), No. 1305.

Inspector Torres did not have the legal authority to make physical contact with D.T. nor detain nor arrest D.T.  In his deposition, Inspector Torres testified that he approached plaintiff because he suspected him of loitering pursuant to

Public Utilities Code ("PUC") 120451. ~~Plaintiff's police practices expert, Roger Clark, has opined officers are trained to refer to the penal code for guidance when enforcing municipal codes.  The California Penal Code only makes it a crime to loiter in public spaces if there is an intent to commit prostitution.  California Penal Code section 653.22.  California Penal Code section 653.20(c) defines loitering as "delay[ing] or linger[ing] without a lawful purpose for being on the property and for the purpose of committing a crime as opportunity may be discovered.~~  D.T. was at the station for lawful purposes. He had a valid metro pass card and was waiting for some friends to arrive. Accordingly, Inspector Torres' order for D.T. to leave the station was without legal authority and any force used to detain or arrest D.T. was excessive because D.T. had not committed a crime nor was D.T. engaged in the commission of a crime.

Damages:

D.T. seeks compensatory damages based on the physical injuries to his person and extreme emotional distress that persists up to the present time and punitive damages against Defendant Inspector Torres.

Defenses:

The applicable jury instruction is California Civil Jury Instruction (CACI) 1305A – *Battery by Law Enforcement Officer (Non-Deadly Force)*. CACI 1305A expressly states that "an [officer] may use reasonable force to arrest/detain/prevent the escape of/[or] overcome the resistance of a person when the officer has reasonable cause to believe that [ ] person has committed a crime. [ ] Even if the officer is mistaken, a person being arrested or detained has a duty not to use force to resist the officer unless the officer is using unreasonable force."

Penal Code § 835a authorizes a public officer to use "reasonable force to effect the arrest, to prevent escape or to overcome resistance … [a] [public] officer who makes or attempts to make an arrest need not retreat or desist from his efforts by reason of the resistance or threatened resistance of the person being arrested."

3:19-cv-00901-RBM-KSC

Where a person knows he or she is being arrested, it is the duty of that person to refrain from using force to resist the arrest, regardless of whether the arrest or detention is not lawful. (Pen. Code, § 834a; *see also People v. Curtis*, 70 Cal.2d 347, 351-357 [1969].) If a detainee deems the arrest to be unlawful, he is required to submit peacefully to the arrest and pursue available remedies through the judicial process. *People v. Curtis, supra*, 70 Cal.2d at 353.

D.T. engaged in both *passive* and *active* resistance to the arrest by (1) ignoring verbal commands to put his hands behind his back; (2) locking his arms to resist being handcuffed; (3) pulling away; (4) wrapping his foot around Torres' foot to gain control/leverage; and (5) use of body strength to resist handcuffing. Torres adhered to POST guidelines/training and MTS Security SOP 200.20 in responding to D.T.'s *passive/active* resistance by using officer's strength, control holds/techniques and takedown to gain control. The force utilized was reasonable and complied with the POST standards/training. D.T. was brought to his feet within 23 seconds and escorted to a bench and ultimately a mobile unit. Torres did ***not*** administer any punches, slaps, kicks, choke holds, chemical spray, Taser, baton, etc. The *minimal* force utilized was reasonable in all aspects for a non-compliant/resisting suspect and does not constitute a battery within the meaning of California law and CACI 1305A.

### I.    Scope of Employment - Peace Officer's Misuse of Authority:

Plaintiff D.T. must prove that Defendant Inspector Torres was acting within the scope of his employment when Plaintiff D.T. was harmed.

The conduct of a peace officer is within the scope of his employment as a peace officer if all of the following are true:

    (a)    The conduct occurs while the peace officer is on duty as a peace officer;

    (b)    The conduct occurs while the peace officer is exercising his authority as a peace officer; and

(c)     The conduct results from the use of his authority as a peace officer.

*See* Judicial Council of California Civil Jury Instructions (2020 edition), No. 3721.

Inspector Torres was in full uniform and operated in the scope of his employment with Defendant SDMTS when he approached and made contact with D.T.  However, Inspector did not have the legal authority to make physical contact with D.T. nor detain nor arrest D.T.  In his deposition, Inspector Torres testified that he approached plaintiff because he suspected him of loitering pursuant to Public Utilities Code ("PUC") 120451. ~~Plaintiff's police practices expert, Roger Clark, has opined officers are trained to refer to the penal code for guidance when enforcing municipal codes.  The California Penal Code only makes it a crime to loiter in public spaces if there is an intent to commit prostitution.  California Penal Code section 653.22.  California Penal Code section 653.20(c) defines loitering as "delay[ing] or linger[ing] without a lawful purpose for being on the property and for the purpose of committing a crime as opportunity may be discovered.~~  D.T. was at the station for lawful purposes. He had a valid metro pass card and was waiting for some friends to arrive. Accordingly, Inspector Torres' order for D.T. to leave the station was without legal authority and any force used to detain or arrest D.T. was excessive because D.T. had not committed a crime nor was D.T. engaged in the commission of a crime.

Damages:

D.T. seeks compensatory damages based on the physical injuries to his person and extreme emotional distress that persists up to the present time and attorney's fees pursuant to California Civil Code § 52.1(h).

Defenses.

Inspector Torres was a uniformed public officer acting within the course and scope of his employment by San Diego Metropolitan Transit System. (See San Diego Metropolitan transit Development Board Ordinance 5.3.) Pursuant to

21

California Penal Code § 836.5, "(a) A public officer or employee, when authorized by ordinance, may arrest a person without a warrant whenever the officer or employee has reasonable cause to believe that the person to be arrested has committed a misdemeanor in the presence of the officer or employee that is a violation of a statute or ordinance that the officer or employee has the duty to enforce [ ] (b) There shall be no civil liability on the part of, and no cause of action shall arise against any public officer or employee acting pursuant to subdivision (a) and within the scope of his or her authority or false arrest or false imprisonment arising out of any arrest that is lawful or that the public officer or employee, at the time of the arrest, had reasonable cause to believe was lawful.  No officer or employee shall be deemed an aggressor or lose his or her right to self-defense by the use of reasonable force to effect the arrest, prevent escape, or overcome resistance."

3.   **Joint Witnesses List:**

   a.   **Joint List of Witnesses Expected to be Called at Trial**

      1)   Tanika Tyler is the mother of D.T. and will discuss the damages suffered by D.T.;

      2)   D.T., the plaintiff, will discuss the facts giving rise to the causes of action and the resulting damages;

      3)   SDMTS Code Compliance Inspector Javier Torres is a defendant and the inspector who detained, arrested and cited Plaintiff D.T.  He will discuss the facts giving rise to the arrest and use of force, as well as his employment, training, policies and procedures as a Code Compliance Inspector;

      4)   Manuel Guaderrama is the former SDMTS Director of Security/Chief who will discuss SDMTS' policies/training regarding detentions, arrests and use of force, as well as the actions of Inspector Torres;

      5)   Al Stiehler is the current SDMTS Director of Transit Security and Passenger Safety, who will testify regarding SDMTS's

policies/training/procedures regarding Code Compliance Inspectors;

6)     Jeremiah Johnson is SDMTS Transit Enforcement: Security Administrator who is responsible for maintenance/operation of station surveillance video and body camera recordings who will provide the requisite foundation for introduction of the station surveillance and BCR videos;

7)     Transit System Security (TSS) Officer Clinton Cardinez is a contract security officer employed by Allied Universal Protection Services who was working with Officer Torres and will discuss the facts/circumstances  giving rise to the detention and arrest of Plaintiff D.T.;

8)     Damontae Hill was a patron at a SDMTS train station when he was detained and arrested by Defendant Torres on October 30, 2019, for loitering and filed a complaint against Defendant Torres (***Objection by Defendants***);

9)     Timothy Curran is the SDMTS Transit Enforcement, Deputy Director who will testify regarding the Uniformed School Detail assigned to the City College Station and Inspector Torres' conduct/performance and compliance with SDMTS training, instruction, policies and procedures;

10)     Corwin Taylor is the SDMTS Transit Enforcement, Communications Lieutenant who was on duty at the time of the incident and received all pertinent dispatches and calls;

11)     Isaiah Alexander is the SDMTS Transit Enforcement, Code Compliance Sergeant who was a witness to the incident and supervised the School Detail assigned to the City College Station;

12)     Dennis Jackson is a Transit System Security (TSS) Lieutenant employed by Allied Universal Protection Services who will testify regarding the training, policies and procedures of TSS officers contracted to SDMTS;

13)     SDPD Haines is an officer with the San Diego Police Department, who responded to the scene and interacted with Plaintiff D.T. at the scene;

23

14)    Gabriel Jesus Castillo is a percipient witness on the date of the incident who was likewise detained, arrested and cited by Inspector Torres;

**b.**    **Joint List of Expert Witnesses Expected to be Called at Trial.**

15)    Roger Clark is plaintiff's police practices expert and will discuss the applicable police practices and standards related to Defendants' liability for the subject incident;

16)    Sheryl Monaughan, Ph.D. Psychologist, QME is Plaintiff's expert witness who will discuss the emotional damages suffered by plaintiff; and

17)    Debbie Eglin is Defendants' law enforcement/police practices expert and will discuss the applicable POST standards and SDMTS' Transit Enforcement practices/standards/training and Inspector Torres' compliance with the same;

**c.**    **List of Additional Witnesses Not Expected to be Called but reserved**

18)    Kent E.W. Karras, DC, QME is D.T.'s treating physician and will discuss the damages suffered by D.T.;

19)    Rural Metro No. 7 paramedics/EMTs who responded to the scene on October 11, 2018.

**4.**    **JOINT EXHIBIT LIST**

**a.**    **List of Exhibits Expected to be Offered At Trial**

1.    Metropolitan Transit System Transit Enforcement, Standard Operations and Procedures Manual Parts 1 and 2 issued July 2017 (identified as Exhibits "K" and "K P2" to Defendant San Diego Metropolitan Transit System's Responses to Requests for Production of Documents, Set One, Propounded by Plaintiff). These are the policies and procedures of SDMTS;

2.    City College Station surveillance video (dated 10/11/2018) footage related to the subject incident.  The video captures the incident;

3.    Body CAM Videos (No. 1/No. 2) re: CCI Javier Torres;

4.      Body CAM Video re: TSS Clinton Cardinez;

5.      Incident Report #18003644 (dated 10/11/2018; CCI Javier Torres);

6.      Supplemental Narrative re: Incident Report #18003644 (dated 10/11/2018; Clinton Cardinez)

7.      Supplemental Narrative re: Incident Report #18003644 (dated 10/11/2018; CCI Javier Torres);

8.      Plaintiff's medical records related to the treatment of his injuries arising from the subject incident by Rady Children's Hospital San Diego on 10/11/2018; (***Objection by Defendants; Hearsay: Foundation***)

9.      Plaintiff's medical records related to the treatment of his injuries arising from the subject incident by Kent E.W. Karras, DC, QME from 12/03/2018 to 01/22/2019; (***Objection by Defendants; Hearsay: Foundation***)

10.      Psychological Evaluation Report and Findings created by Sheryl Monaughan, Ph.D. Psychologist, QME related to Plaintiff's mental and emotional damages caused by the subject incident; (***Objection by Defendants; Hearsay: Foundation***)

11.      Roger Clark's January 22, 2021 Expert Report related to the subject incident; (***Objection by Defendants; Hearsay: Foundation***)

12.      Citation # Z569884 (dated 10/11/2018) issued to Plaintiff for violating Public Utilities Code § 120451 and Penal Code § 640(b)(5);

13.      SDMTS rejection of Plaintiff's Government Claim for Damages dated 03/06/2019;

14.      Narrative of the Subject Incident written by Plaintiff dated October 11, 2018;

15.      Plaintiff's MetroPCS receipt dated October 11, 2018;

16.      San Diego Metropolitan Transit System Customer Service Form completed by Plaintiff on October 12, 2018;

25

17.     San Diego Metropolitan Transit System Public Records Act Request Form completed by Plaintiff;

18.     Letter written by Damontae Hill to the Office of General Counsel for San Diego Metropolitan Transit System regarding a civil rights complaint, wherein Officer Torres assaulted and slammed Mr. Hill to the ground at the Linda Vista trolley station on October 30, 2019 (***Objection by Defendants***);

19.     Plaintiff's Responses to Requests for Admissions, Set One, Propounded by Defendant San Diego Metropolitan Transit System;

20.     Defendant San Diego Metropolitan System's Responses to Requests for Admissions, Set One, Propounded by Plaintiff;

21.     Plaintiff's Responses to Interrogatories, Set One, Propounded by Defendant San Diego Metropolitan System;

22.     Defendant San Diego Metropolitan Transit System's Responses to Interrogatories, Set One, Propounded by Plaintiff;

23.     Government Claim Form re: Tanika Tyler, Guardian Ad Litem for D.T. (minor)

24.     Code Compliance Inspector, Training Manual;

25.     Transit Enforcement Personnel File re: CCI Javier Torres;

26.     Transit Enforcement Training File re: CCI Javier Torres;

27.     City College Station Configuration/History Records;

28.     Rural Metro No. 7 Paramedic/EMT records (dated 10/11/2018);

29.     Trader Joe's employment records re: Plaintiff D.T. **(Objection by Plaintiff)**;

30.     Field Training Program: Code Compliance Transit Enforcement Dept. San Diego Trolley (revised 02/2016);

31.     MTS: Code Compliance Inspector Job Description;

32.     California Commission Peace Officer Standards & Training (POST) Certified PC 832 and Student Workbook (revised Sept. 2019);

33.      F.R.C.P. Rule 26 Report (dated Jan. 20, 2021) by Debbie Eglin;

34.      F.R.C.P. Rule 26 Rebuttal Report (dated Feb. 4, 2021) by Debbie Eglin.

**b.**      **List of Exhibits not Expected to be Offered at Trial but Reserved**

None.

**5.**      <u>**JOINT STATEMENT OF STIPULATED FACTS**</u>

a.      SDMTS is the owner/operator of the City College Trolley Station in the City of San Diego;

b.      SDMTS – Transit Enforcement Department employs Code Compliance Inspectors (CCI) who are classified as public officers pursuant to California Penal Code section 836.5;

c.      California Government Code § 836.5 authorizes a public officer to arrest a person without a warrant whenever the officer has reasonable cause to believe that the person to be arrested has committed a misdemeanor or infraction in the presence of the officer that is a violation of a statute or ordinance that the officer has the duty to enforce;

d.      California Public Utilities Code § 120451 prohibits persons from loitering in or about a transit facility and a violation constitutes a misdemeanor punishable by a fine not exceeding five hundred dollars ($500) or by imprisonment not exceeding six (6) months;

e.      MTDB Ordinance 13.5L prohibits any person on transit property to fail or refuse to comply with any lawful order or direction of any MTS inspector, security officer, whether an employee or designated agent of MTS, or any peace officer;

f.      On October 11, 2018, Inspector Torres was part of a school detail comprised of uniformed Code Compliance Inspectors and Transit System Security Officers assigned to the City College Station for the purpose of maintaining order and ensuring students/persons are not loitering in the station, interfering with train

movement and/or engaging in criminal activity.

       g.    Inspector Torres was in full uniform and acting within the course and scope of his employment as a public officer by SDMTS on October 11, 2018;

**6.**    **DEPOSITION TRANSCRIPTS TO BE USED IN LIEU OF LIVE TESTIMONY:**  None.

**7.**    **JURY INSTRUCTIONS**

Plaintiff and Defendants' Proposed Joint Jury Instructions

**STATE**

CACI:

400    Negligence – Essential Factual Elements

401    Basic Standard of Care

405    Comparative Fault of Plaintiff

411    Reliance on Good Conduct of Others

413    Custom or Practice

440    Negligent Use of Nondeadly Force by Law Enforcement Officer in Arrest or Other Seizure – Essential Factual Elements

1305A    Battery by Law Enforcement Officer (Non-Deadly Force) – Essential Factual Elements

3000  Violation of Federal Civil Rights – In General – Essential Factual Elements (42 U.S.C. § 1983)

3020  Excessive Use of Force – Unreasonable Arrest or Other Seizure – Essential Factual Elements (42 US.C. § 1983)

3050  Retaliation - Essential Factual Elements (42 US.C. § 1983)

3055  Rebuttal of Retaliatory Motive

3060  Unruh Civil Rights Act – Essential Factual Elements (Civ. Code, §§ 51, 52)

3064  Threats of Violence – Ralph Act – Essential Factual Elements (Civ. Code, § 451.7)

3066  Bane Act – Essential Factual Elements (Civ. Code, § 52.1)

28

3067   Unruh Civil Rights Act – Damages (Civ. Code, §§ 51, 52(a))

3068   Acts of Violence  – Ralph Act – Essential Factual Elements (Civ. Code § 51.7)

3721   Scope of Employment – Peace Officer's Misuse of Authority

**FEDERAL**

1.1   Cover Sheet

1.2   Duty of Jury (Court Reads and Provides Written Set of Instructions)

1.3   Duty of Jury (Court Reads Instructions Only)

1.4   Duty of Jury (Court Reads and Provides Written Instructions at End of Case)

1.5   Claims and Defenses

1.6   Burden of Proof – Preponderance of the Evidence

1.8   Two or More Parties – Different Legal Rights

1.9   What Is Evidence

1.10   What Is Not Evidence

1.11   Evidence for Limited Purpose

1.12   Direct and Circumstantial Evidence

1.13   Ruling on Objections

1.14   Credibility of Witnesses

1.15   Conduct of the Jury

1.16   Publicity During Trial

1.17   No Transcript Available to Jury

1.18   Taking Notes

1.19   Questions to Witnesses by Jurors

1.20   Bench Conferences and Recesses

1.21   Outline of Trial

2.0   Cautionary Instructions

2.1   Stipulated Testimony

2.2   Stipulations of Fact

2.3     Judicial Notice

2.4     Deposition in Lieu of Live Testimony

2.5     Transcript of Recording in English

2.9     Impeachment Evidence - Witness

2.11    Use of Interrogatories

2.12    Use of Requests for Admission

2.13    Expert Opinion

2.14    Charts and Summaries Not Received in Evidence

2.15    Charts and Summaries in Evidence

2.16    Evidence in Electronic Format

3.1     Duty to Deliberate

3.2     Consideration of Evidence – Conduct of the Jury

3.3     Communication With Court

3.4     Readbacks or Playbacks

3.5     Return of Verdict

3.6     Additional Instructions of Law

3.7     Deadlocked Jury

3.8     Continuing Deliberations After Juror Is Discharged

3.9     Post-Discharge Instruction

4.8     Act of Agent Is Act of Principal – Scope of Authority Not in Issue

4.9     Both Principal and Agent Sued – No Issue as to Agency or Authority

5.1     Damages - Proof

5.2     Measures of Types of Damages

5.3     Damages – Mitigation

5.4     Damages Arising in the Future – Discount to Present Cash Value

5.5     Punitive Damages

5.6     Nominal Damages

9.1     Section 1983 Claim – Introductory Instruction

9.1     Section 2000(d) Claim – Introductory Instruction

| | |
|---|---|
| 9.2 | Causation |
| 9.3 | Section 1983 Claim Against Defendant in Individual Capacity – Elements and Burden of Proof |
| 9.11 | Particular Rights – First Amendment – "Citizen" Plaintiff |
| 9.20 | Particular Rights – Fourth Amendment – Unreasonable Seizure of Person – Generally |
| 9.21 | Particular Rights – Fourth Amendment – Unreasonable Seizure of Person – Exception to Warrant Requirement – *Terry* Stop |
| 9.22 | Particular Rights – Fourth Amendment – Unreasonable Seizure of Person – Exception to Warrant Requirement – *Terry* Frisk |
| 9.23 | Particular Rights – Fourth Amendment – Unreasonable Seizure of Person – Probable Cause Arrest |
| 9.25 | Particular Rights – Fourth Amendment – Unreasonable Seizure of Person – Excessive Force |
| 10.3 | Civil Rights – Title VII – Disparate Treatment – "Motivating Factor" – Elements and Burden of Proof |

The Parties reserve the right to use any standard jury instruction requested by any other party in this litigation. The Parties also reserve the right to withdraw any of the standard jury instructions identified above and to object to the use of said instruction by any other party in this litigation.  The Parties further reserve the right to request that additional standard jury instructions be given based upon the evidence presented and the defenses raised at the time of trial.

**8.**  **BOTH PLAINTIFFS & DEFENDANTS REQUEST A JURY TRIAL.**

**9.**  **TRIAL ESTIMATE: Five Days**.

Dated:  April 14, 2023

*[signature]*

HON. RUTH BERMUDEZ MONTENEGRO
UNITED STATES DISTRICT JUDGE